NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0629n.06

No. 11-3989

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jun 15, 2012**

LEONARD GREEN, Clerk

SCHWARTZ   MANES   RUBY   AND )
SLOVIN, L.P.A.,                                    )
                                                          )
            Plaintiff-Appellant,              )
                                                          )       ON   APPEAL   FROM   THE   UNITED
v.                                                       )       STATES  DISTRICT  COURT  FOR  THE
                                                          )       SOUTHERN DISTRICT OF OHIO
MONITOR LIABILITY MANAGERS, LLC; )
CAROLINA   CASUALTY   INSURANCE )
COMPANY,                                          )              **OPINION**
                                                          )
            Defendants-Appellees.          )

Before:  COOK and STRANCH, Circuit Judges; LAWSON, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.**  Plaintiff-Appellant Schwartz Manes Ruby & Slovin,

L.P.A. ("SMRS") appeals the district court's grant of summary judgment in favor of SMRS's

malpractice liability insurance carrier Carolina Casualty Insurance Company and Monitor Liability

Managers, LLC (collectively "Carolina").[1]  SMRS challenges the district court's holding that

Carolina had no obligation to defend or indemnify SMRS for an underlying claim asserted against

it by a former client because SMRS should have reasonably foreseen prior to the policy inception

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of
Michigan, sitting by designation.

[1]Carolina Casualty Insurance Company provides malpractice insurance to Ohio law firms.
Monitor Liability Managers, LLC is a claims administrator that manages claims.  Because this
distinction is not relevant to the issues before this Court, this opinion will address their actions
collectively.

date that the former client might bring a claim against SMRS.  For the following reasons, we

**AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The undisputed facts—as summarized by the district court in *Schwartz Manes Ruby, &*

*Slovin, L.P.A. v. Monitor Liability Managers, LLC*, No. 1:09cv790, 2011 WL 3627287, at *1-2 (S.D.

Ohio Aug. 17, 2011)—are as follows:

> In April of 2002, Plaintiff Schwartz Manes Ruby & Slovin, L.P.A. ("SMRS") was retained to represent Barbara Kissel in connection with a property dispute filed by her stepmother, Clara Kissel; that case was captioned *Kissel v. Kissel*, Kenton County Circuit Court, 02 CI 0792 (the "Kissel matter").  SMRS associate Harry Sudman originated the Kissel matter.  Because Sudman was not licensed to practice law in Kentucky, he assigned the Kissel matter to another SMRS associate, David Snyder.  (Levin Aff. ¶ 18.)  Snyder left SMRS in 2003. (*Id.* ¶ 15.)  Sudman left SMRS in October of 2005. (*Id.*)  From April 5, 2002 through September 15, 2004, SMRS billed 11.96 hours to the Kissel matter.  (Doc. 26-1, Ex. L.)  And after September 15, 2004, no SMRS attorney performed work on the Kissel matter.
>
> In 2005, SMRS failed to appear at the scheduled trial in the Kissel matter. On March 14, 2006, the Kentucky court entered judgment in favor of Clara Kissel and against Barbara Kissel.  On March 17, 2008, SMRS returned the remainder of Barbara Kissel's retainer.  Upon receiving the check from SMRS, Barbara Kissel retained new counsel, Paul Vesper. On May 29, 2008, Vesper requested a copy of Kissel's file from SMRS.  On June 15, 2008, Vesper informed SMRS that the Kissel file contained a notice notifying SMRS of the 2005 trial date.  He further informed SMRS that the Kentucky court had entered judgment in Clara Kissel's favor.  Vesper then asked for an explanation as to why SMRS failed to represent Barbara Kissel in the 2005 trial.
>
> SMRS received Vesper's letter on June 18, 2008.  Based on this letter, SMRS attorney Debbe Levin undertook an internal investigation into the firm's representation of Barbara Kissel.  (Levin Aff. ¶ 11.)  Levin obtained a copy of the docket for the Kissel matter from the Kenton County Circuit Court. (*Id.* ¶ 12.)  Levin was unable to determine whether any attorney at SMRS received notice from the court regarding the 2005 trial date.  (*Id.* ¶ 17.)  Levin's investigation revealed the following:  Snyder returned the Kissel file to Sudman when Snyder left SMRS in

2003; Sudman asked Cincinnati attorney Geoffrey Damon to take the Kissel matter when Sudman left SMRS in October of 2005 (*id.* ¶ 20); and Damon had no recollection of talking with Sudman about the Kissel case and denied that he had agreed to take over the file. (*id.* ¶ 21). On July 10, 2008, SMRS notified its insurance agent, Fred Wittenbaum of SP Agency, that Barbara Kissel might assert a legal malpractice claim against it.

On July 24, 2008, Carolina issued Lawyers Professional Liability Policy Number 9849712 to SMRS for the policy period of June 29, 2008 to June 29, 2009 (the "Carolina Policy"). Although SMRS did not receive a written copy of the Carolina Policy until on or about August 6, 2008 (Levin Aff. ¶ 25), SMRS was informed in documents dated June 12, 2008 and June 24, 2008 that a "copy of the Proposal Forms and a specimen copy of the Policy Form" could be downloaded from Defendants' website (doc. 26-1 at 17-30).

. . . .

On January 18, 2009, Barbara Kissel filed suit against SMRS, Sudman, and Snyder in Kenton County Circuit Court; that case was captioned *Kissel v. Schwartz Ma[n]es & Ruby Co., L.P.A., et al*, Kenton County Circuit Court, 09 CI 165. In that case, Barbara Kissel claims that SMRS committed legal malpractice by, *inter alia*, failing to appear at her 2005 trial and failing to disclose the resulting adverse judgment. [Carolina] initially undertook defense of the malpractice action under a reservation of rights, and later withdrew representation and denied coverage on SMRS's claim. (Doc. 2-1 at 17.)

(footnotes omitted) (brackets added).

On September 30, 2009, SMRS filed a complaint against Carolina in state court seeking a declaratory judgment that Carolina was obligated to provide SMRS with a defense and coverage in Kissel's malpractice suit against SMRS. Carolina removed the suit to federal court and moved for summary judgment, asking the district court to declare that Carolina had no obligation to defend or cover the malpractice suit filed by Kissel because, prior to the effective date of the Carolina Policy, SMRS could have reasonably foreseen that Barbara Kissel might make a malpractice claim against the firm, and therefore the claim fell outside the scope of coverage defined by the insuring

agreement. The district court agreed and granted summary judgment in favor of Carolina. SMRS

timely appealed.

## II.  ANALYSIS

### A.    Standard of Review

The district court's grant of summary judgment is reviewed de novo. *Travelers Prop. Cas.*

*Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 264 (6th Cir. 2010). Summary judgment is

appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a) (2010). There is no genuine issue of material fact when no

"reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).

### B.    Scope of Policy Coverage

A court sitting in diversity applies the law of the forum state and, in the absence of direct

state court precedent, must make its best prediction as to how the highest state court would resolve

the issues presented. *Stalbosky v. Belew*, 205 F.3d 890, 893-94 (6th Cir. 2000). Ohio law governs

the Carolina Policy. Under Ohio law, an insurance policy is a contract whose interpretation is a

matter of law. *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006).

Contract terms are to be given their plain and ordinary meaning. *Id.* However, if provisions are

susceptible of more than one interpretation, they must be construed strictly against the insurer and

liberally in favor of the insured. *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011).

"[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly*

intended to be excluded." *Sharonville*, 846 N.E.2d at 836 (emphasis in original) (citation omitted).

SMRS switched legal malpractice insurance carriers in 2008. From June 29, 2007 through June 28, 2008, SMRS utilized American Guarantee & Liability Insurance Company, but effective June 29, 2008 SMRS switched to a new carrier, Carolina. The relevant portion of the Carolina Policy reads as follows:

> I. Insuring Agreement
>
> This Policy shall pay on behalf of the **Insured** all **Damages** and **Claims Expense** that the **Insured** shall become legally obligated to pay, arising from any **Claim** first made against an **Insured** during the **Policy Period** and reported to the **Insurer** in writing during the **Policy Period** or within 60 days thereafter, for any **Wrongful Act**, provided that prior to the inception date of the first Lawyers' Professional Liability Insurance Policy issued by the **Insurer** to the **Named Insured**, which has been continuously renewed and maintained in effect to the inception of this **Policy Period**, the **Insured** did not know, or could not reasonably foresee that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

The Policy defines "**Claim**" as "a written demand for monetary or non-monetary relief, including, but not limited to, a civil, criminal, administrative or arbitration proceeding. . . . A **Claim** shall be deemed to have been first made at the time notice of the **Claim** is first received by any **Insured**." "**Wrongful Act**" is defined as "any actual or alleged act, omission, or **Personal Injury** arising out of **Professional Services** rendered by an **Insured** or by any person for whose acts or omissions the **Insured** is legally responsible."

Carolina contends that under Ohio law there is no policy coverage for Kissel's suit against SMRS because SMRS could "reasonably foresee" that its representation of Kissel "might reasonably be expected to be the basis of a **Claim**," and therefore Kissel's claim was not covered by the insuring agreement. By the Policy effective date, June 29, 2008, SMRS was aware that it was counsel of

record listed on the court docket in a lawsuit pending against its client; that SMRS failed to appear at a scheduled trial; that its failure to appear resulted in the entry of an adverse judgment against its client; and that its client had retained new counsel, who was aware of the judgment. Carolina argues that, on these facts, no reasonable jury could find that SMRS should not have been able to foresee that Kissel might bring a claim against SMRS.

The plain language of the insuring agreement employs a mixed subjective-objective analysis to determine whether an insured could "reasonably foresee" that particular acts "might reasonably be expected to be the basis of a **Claim**." The question of what facts SMRS knew is a subjective inquiry, while the question of whether SMRS could reasonably foresee that these facts might give rise to a claim is an objective inquiry based on a "reasonable insured" standard. *See, e.g.*, *Prof'l Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co.*, No. 2:06-CV-240, 2009 WL 4281263 at *10-11 (S.D. Ohio Nov. 24, 2009).

SMRS argues that the policy language "reasonably be expected" is ambiguous and should be construed in favor of coverage. *See Hunter*, 948 N.E.2d at 935 (ambiguous language is to be liberally construed in favor of the insured). SMRS cites *Professionals Direct Insurance Co. v. Wiles, Boyle, Burkholder & Bringardner Co.,* in which a district court found the language "reasonably be expected" ambiguous. *See* 2009 WL 4281263, at *11-13. There, the court found the language "reasonably be expected" could require reporting under the policy when there was *any possibility* of or potential for a claim or it could require reporting only when a claim was *reasonably probable*. *Id.* at *11. Having identified an ambiguity, the court interpreted the language in favor of the insured and held that, as used in the policy before the court, "reasonably be expected" only required the

insured "to report claims that were reasonably probable, reasonably likely to happen, or reasonably certain." *Id.* at \*13. We need not decide whether the undefined language in the Carolina Policy—which precludes coverage for wrongful acts that "might reasonably be expected to be the basis of a **Claim**"—is ambiguous, because even under a more favorable interpretation, a reasonable insured would have expected a malpractice claim by Kissel against SMRS to be reasonably probable.

SMRS was aware of facts that might reasonably be expected to be the basis of a claim by Kissel against SMRS. As Carolina points out, it is notable that the adverse judgment obtained against Kissel at the missed trial has preclusive effect on Kissel's potential claims against her step-mother. *Cf. Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 (3d Cir. 2001) (where case was dismissed due to alleged attorney negligence and client wrote a letter expressing his dissatisfaction with his representation, "[a] reasonable attorney also 'would have realized that he had a dissatisfied client who would undoubtedly take further legal action absent a miraculous and unlikely turnaround' in events." (citation omitted)). SMRS was aware that it was counsel of record listed on the court docket in a lawsuit pending against its client; that SMRS failed to appear at a scheduled trial; that its failure to appear resulted in the entry of an adverse judgment against its client; and that its client had retained new counsel, who was aware of the judgment. In our view, a reasonable attorney in possession of these facts would have realized that a claim by Kissel against SMRS was reasonably probable.

SMRS argues that, even if it should have reasonably foreseen Kissel's suit based on the firm's failure to appear at her trial, it could not have reasonably foreseen her malpractice claims based on insufficient representation, including SMRS's failure to properly research Kissel's case,

its failure to file a counterclaim for expenses, and its failure to perform any work on her behalf after September 15, 2004. Therefore, SMRS argues, Kissel's claims against SMRS should be covered under the Carolina Policy to the extent the claims rely on alleged failures in representation separate from SMRS's failure to appear at Kissel's trial.

We are not persuaded that Kissel's claims can be separated in this manner. Although Kissel brought multiple claims against SMRS—professional negligence, breach of contract, breach of fiduciary duties, gross negligence, and breach of the covenant of good faith and fair dealing—all claims were based on SMRS's alleged deficient representation of Kissel in her property-dispute matter and each claim encompasses all SMRS's alleged failures. We do not believe SMRS's failure to attend Kissel's trial can be divorced from the substance of these claims. Further, the Carolina Policy precludes SMRS's proposal. Where a particular "**Wrongful Act**" falls outside the scope of coverage based on reporting requirements, Section IV(K) of the Policy also excludes coverage for "**Related Wrongful Acts**." The Policy defines "**Related Wrongful Acts**" as "**Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision." SMRS's alleged failure to comprehensively research and litigate Kissel's lawsuit and potential countersuit against her step-mother is certainly logically connected to its alleged failure to attend her trial in the same matter. For these reasons, all Kissel's claims alleged in her 2009 malpractice suit against SMRS based on its failed representation of her property-dispute matter are not included within the scope of coverage under the Carolina Policy.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court granting summary

judgment in favor of the Defendants.