**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0062n.06

Case No. 17-3463

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 06, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SPIROS E. GONAKIS, SR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| MEDMARC CASUALTY INSURANCE | ) | OHIO |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SILER, WHITE, and THAPAR, Circuit Judges.

**SILER**, Circuit Judge. Four years after attorney Spiros E. Gonakis, Sr., represented Rolvow Properties, LLC in a real estate transaction, he received a letter from Rolvow's new counsel advising that Rolvow was considering filing suit against persons involved in the sale. After receiving the letter, Gonakis investigated and concluded that Rolvow could not maintain a viable claim against him. Around this time, Gonakis also switched malpractice insurance carriers. His new policy, issued by Medmarc Casualty Insurance Company, excluded coverage for preexisting claims when the insured, prior to the coverage period, had knowledge of facts that "might reasonably be expected to result in a claim." When Rolvow eventually brought a legal malpractice claim against Gonakis, Medmarc denied coverage, and Gonakis brought this declaratory judgment action. Because Rolvow's malpractice claim was not reasonably foreseeable, we **REVERSE** the district court's grant of summary judgment in favor of Medmarc.

I.

In 2011, Rolvow retained Gonakis to review a real estate purchase agreement, promissory note, and mortgage in connection with its sale of an apartment building to Classic Victor, LLC. Title to the building transferred from Rolvow to Classic Victor in January 2012, and Gonakis' representation of Rolvow ceased. Subsequently, Classic Victor breached the parties' purchase agreement and defaulted on the promissory note and mortgage it had executed in Rolvow's favor.

Four years later, Gonakis received a letter from attorney Stephen G. Thomas on behalf of Rolvow (the "Thomas Letter"). The letter was addressed to Edwin P. Pigman, Esq.; Michael Burrington, c/o Howard Hanna; Howard Hanna Real Estate Services; Brian Stark, c/o Classic Victor, LLC; Bill Dragolis, c/o Classic Victor, LLC; and Gonakis. In full, the Thomas Letter stated:

> Re: Sale of 2587 Noble Road, Cleveland Heights, Ohio
> Rolvow Properties, LLC (Brian McMillin) to Classic Victor, LLC (Brian Stark)

> Gentlemen:

> The undersigned has been retained by Brian McMillin in his capacity as Managing Member of Rolvow Properties, LLC, to prosecute claims for damages arising from your separate involvements (as applicable) in the sale by Rolvow Properties, LLC of the apartment building located at 2587 Noble Road, Cleveland Heights, Ohio to Classic Victor, LLC, and/or the impact of those events on the collateral foreclosure proceedings pending in the Cuyahoga County Court of Common Pleas, as Case No. 832926.

> The subject sale consummated when title transferred on or about January 9, 2012, as a result of negotiations during the period of December 15, 2011 through December 30, 2011, in which all of you but Mr. Pigman were involved.

> Please refer this letter to the carrier of your professional liability, errors and omissions or comprehensive general liability insurance policy, or to your legal adviser if you do not maintain any such coverage.

Due to the potential expiration next week of the four-year statute of limitation that applies to Michael Burrington, a Complaint will be commenced against Mr. Burrington and Howard Hanna Real Estate Services while the undersigned investigates allegations of fraud against Mr. Stark and Mr. Dragolis, and the negligent failure of persons other than Mr. Stark and Mr. Dragolis to protect Rolvow Properties, LLC from the professionally-foreseeable risks that have been discovered recently by Mr. McMillin, arising from anticipated deficiencies in foreclosure proceedings pending against Classic Victor, LLC.

Shortly after receiving the letter, Gonakis searched the Cuyahoga County Court of Common Pleas docket. He discovered that in September 2014, attorney Edwin P. Pigman filed a foreclosure action against Classic Victor on behalf of Rolvow. In October 2015, the court denied Pigman's motion for summary judgment because he failed to file a preliminary judicial report/title commitment, as required by state and local rules. A month later, Rolvow secured new counsel and filed a motion for leave to file an amended complaint to join a new party. Based upon this investigation and his reading of the Thomas Letter, Gonakis concluded that Rolvow was not alleging he committed malpractice. Further, he surmised that any claims against him by Rolvow would fall well outside Ohio's one-year statute of limitations for legal malpractice. Gonakis did not forward the letter to Professional Solutions Insurance Company, his malpractice carrier at the time.

Gonakis switched insurance carriers sometime after receiving the Thomas Letter. His new policy, issued by Medmarc Casualty Insurance Company, was a "Claims Made and Reported" policy, meaning that claims were only covered if they were both made against Gonakis and reported to Medmarc during the policy term. The policy contains several exclusions, two of which are relevant. First, the policy excludes coverage for any claim "that occurred prior to the continuous coverage effective date"—here, January 15, 2016—"if on that date, the Insured knew or believed, or had reason to know or believe, that the circumstance, act,

error, or omission might reasonably be expected to result in a claim . . . against the insured." Similar or identical language appears elsewhere in the policy and in Gonakis' application for coverage. Second, the policy excludes coverage for "any claim involving the rendering of or failure to render investment advice."

In April 2016, Rolvow served Gonakis with its First Amended Complaint in *Rolvow Properties, LLC v. Burrington*, Cuyahoga County Court of Common Pleas, No. CV-15-856082. The amended complaint named Gonakis as a defendant and alleged against him one count of legal malpractice. Gonakis forwarded the complaint and the Thomas Letter to his Medmarc insurance agent. Medmarc denied coverage, and Gonakis filed this declaratory judgment action. The district court denied Gonakis' motion for summary judgment and granted summary judgment in Medmarc's favor, holding that "a reasonable insured would have expected a malpractice claim by Rolvow after receiving the Thomas letter." This appeal followed.

## II.

We review a district court's grant of summary judgment de novo, "construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (citation omitted).

## III.

All agree that Ohio law applies. Under Ohio law, "an insurance policy is a contract whose interpretation is a matter of law." *Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Mgrs., LLC*, 483 F. App'x 241, 244 (6th Cir. 2012) (citing *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 836 (Ohio 2006)). "Contract terms are to be given their plain and ordinary meaning," but "if provisions are susceptible of more than one interpretation, they must be construed strictly against the insurer and liberally in favor of the insured." *Id.* (citing

*Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011)). Exclusions are construed narrowly and apply "only to that which is *clearly* intended to be excluded." *Sharonville*, 846 N.E.2d at 836 (citation omitted).

A.

Under the first relevant policy provision, there is no coverage if, based upon the Thomas Letter, Gonakis "knew or should have known of facts that reasonably could have been expected to result in a claim prior to" January 15, 2016. There is no dispute that Gonakis received the Thomas Letter before that date. So the critical question is whether, following Gonakis' receipt of the letter, Rolvow's claims "reasonably could have been expected."

The policy itself does not define the phrase "reasonably could have been expected." Gonakis urges us to adopt an insured-friendly interpretation and hold that the policy "requir[ed] reporting only when a claim was reasonably probable." In *Schwartz*, 483 F. App'x at 246, we declined to address this same question "because even under a more favorable interpretation, a reasonable insured would have expected a malpractice claim . . . to be reasonably probable." As more fully explained below, however, the same is not true here, so we must squarely address the meaning of the contested policy language.

We find persuasive the reasoning of the district court in *Professionals Direct Insurance Co. v. Wiles, Boyle, Burkholder & Bringardner Co.*, No. 2:06-CV-240, 2009 WL 4281263 (S.D. Ohio Nov. 24, 2009). There, the district court wrestled with the same "reasonably be expected" language present in Gonakis' Medmarc policy. In *Wiles*, the district court found a question of fact regarding whether a law firm acted reasonably in providing notice to its insurance carrier of a potential claim. *Id.* at *13. That claim was derived from the firm's late notice of appeal in an earlier case, and whether the notice was timely was a disputed question of Ohio law at the time it

was filed. *Id.* Significant for our purposes, the district court also held that the phrase "reasonably be expected" was ambiguous. *Id.* (citation omitted). Construing that phrase in the insured's favor, the district court interpreted "reasonably be expected" to require reporting of "claims that were reasonably probable, reasonably likely to happen, or reasonably certain," rather than "every possible or feasible claim." *Id.*

We agree that Ohio law requires us to adopt an insured-friendly construction of the phrase "reasonably be expected to result in a claim." *Sharonville*, 846 N.E.2d at 836. Like a runner in baseball, the tie here goes to the insured: "[A]n exclusion from liability must be clear and exact in order to be given effect," and "[i]f an exclusion is ambiguous, it is construed in favor of affording coverage to the insured." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 832 (6th Cir. 2012) (citing *St. Marys Foundry, Inc. v. Emp'rs Ins. of Wausau*, 332 F.3d 989, 993 (6th Cir. 2003); *Lane v. Grange Mutual Cos.*, 543 N.E.2d 488, 490 (Ohio 1989)). In this context, the Medmarc policy is most naturally read to exclude coverage for claims that were reasonably foreseeable to Gonakis prior to the inception of the policy.

On balance, the Thomas Letter was insufficient to make Rolvow's claim against Gonakis reasonably foreseeable. The body of the letter neither mentions Gonakis by name nor details the factual or legal basis for any forthcoming claims against him. Instead, attorney Thomas states that he has been retained by Rolvow "to prosecute claims for damages arising from your separate involvements (as applicable) in the sale by Rolvow Properties, LLC of the apartment building . . . and/or the impact of those events on the collateral foreclosure proceedings." Gonakis knew that he was not involved in the foreclosure proceedings, and his representation of Rolvow had been limited to the review of the real estate purchase agreement, promissory note,

and mortgage. Ohio's one-year statute of limitations for attorney malpractice, *see* Ohio Rev. Code § 2305.11, led Gonakis to reasonably believe that Rolvow would not bring a claim against him arising from his limited involvement in the transaction.

Gonakis' review of the court record in the foreclosure case only served to strengthen this conclusion. It appeared to Gonakis that attorney Pigman had erred by failing to follow certain state procedural rules, and Rolvow had secured new counsel who was prepared to further pursue the foreclosure. This suggested to Gonakis, again reasonably, that the Thomas letter's mention of "the negligent failure of persons other than Mr. Stark and Mr. Dragolis to protect Rolvow Properties, LLC from the professionally-foreseeable risks . . . arising from anticipated deficiencies in foreclosure proceedings" pertained only to Pigman.

Medmarc leans most heavily upon the third paragraph of the Thomas letter, which directs all its addressees to "refer this letter to the carrier of your professional liability . . . insurance policy." While this sentence certainly weighs in Medmarc's favor, we do not believe that, standing alone, such an admonishment is sufficient to trigger an insured's duty to report a reasonably probable claim. Under the facts and circumstances of this case, where Gonakis was not mentioned by name or deed in the Thomas letter, a reasonable attorney in his position would not have believed that a claim by Rolvow was forthcoming.

This case is a far cry from *Schwartz*, where we held that a former client's malpractice suit was foreseeable. There, a law firm, SMRS, received a letter from a former client's new attorney alleging that three years earlier, an SMRS attorney failed to appear for a trial. *Schwartz*, 483 F. App'x at 243. That failure eventually resulted in a judgment against the client. *Id.* We noted that after receiving the letter and conducting an internal investigation, SMRS was aware that its failure to appear had resulted in judgment against its former client and that its former client had

secured new counsel who knew of the adverse judgment. *Id.* at 246. "[A] reasonable attorney in possession of these facts," we wrote, "would have realized that a claim . . . against SMRS was reasonably probable." *Id.*

In contrast, Gonakis possessed no facts beyond those contained in the Thomas letter suggesting that he might soon be sued for malpractice, and his own investigation revealed facts suggesting the opposite. Undoubtedly, this is a close case. But ultimately, the Thomas letter did not make Rolvow's eventual malpractice claim reasonably foreseeable. Therefore, coverage for that claim is not precluded by the "reasonably could have been expected" language occurring throughout the Medmarc application and policy.

B.

Medmarc also relies upon a second exclusion. Gonakis' Medmarc policy excludes coverage for "any claim involving the rendering of or failure to render investment advice." The policy defines "investment advice" thusly:

> **Investment advice** means giving advice regarding the value of an investment; or recommending investment in, purchase of, or sale of a particular investment; or managing any investment; or buying or selling any investment for another; or acting as a broker for a borrower or lender; or performing economic analysis of any investment; or inducing others to make a particular investment; or giving advice where the compensation for such advice is contingent upon the performance of a particular investment.

Medmarc argues that Gonakis' representation of Rolvow during its real estate transaction with Classic Victor falls within this definition.

We disagree. Medmarc's argument is belied by Rolvow's complaint against Gonakis, which states that Rolvow hired Gonakis "to perform legal services for [Rolvow] that [Michael] Burrington believed were necessary to the sale" of the Cleveland Heights apartment building. Rolvow then alleges that "Gonakis was negligent and breached fiduciary duties owed to Rolvow

in failing to advise Rolvow on the standard protocols that a commercial or reasonably prudent private lender would follow as a condition of financing the purchase by Classic Victor, LLC of the Premises."

Gonakis' actions, as described by Rolvow, do not satisfy any of the criteria listed in the policy's definition of investment advice. The aim of the investment-advice exclusion is to preclude coverage when an attorney gives advice regarding the financial benefits of a particular investment, or is involved in a capacity other than providing legal services. Rolvow does not claim that Gonakis recommended the sale, otherwise gave investment advice, or assumed a role other than as counsel. On this record, Medmarc has not carried its burden of showing that Gonakis crossed the admittedly blurry line between legal advice and investment advice. Construing the exclusion narrowly in Gonakis' favor, as we must, the investment-advice exclusion does not preclude coverage under the Medmarc policy.

**REVERSED** and **REMANDED**.