**File Name: 06a0444n.06**
**Filed: June 27, 2006**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Nos: 05-3842

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


YOUNGSTOWN PUBLISHING CO., ET AL.,
     *Plaintiffs - Appellants*

On Appeal From the United States District
Court for the Northern District of Ohio



     v.



GEORGE MCKELVEY, ET AL,
     *Defendant - Appellee*

_____/


BEFORE: KENNEDY, COLE, and MCKEAGUE, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiffs, Youngstown Publishing, three of its reporters and editor, brought this action seeking a preliminary and permanent injunction against Defendant former Mayor George M. McKelvey in his official capacity, and the city he lead, Youngstown, Ohio, alleging they were retaliated against for exercising First Amendment rights. Plaintiffs contend that in response to publishing articles criticizing Mayor McKelvey in the *Business Journal*, Mayor McKelvey issued an edict prohibiting members of his administration from communicating with the *Business Journal*. Both parties filed motions for summary judgment. The district court granted the Defendant's motion

and denied the Plaintiffs'; finding Plaintiffs failed to establish that Defendants retaliated against them for exercising their First Amendment right to criticize his administration.

On appeal, Plaintiffs contend that the district court erred in its analysis of their retaliation claim and also argue that the edict is facially unconstitutional. After the filing of this appeal, a new mayor, Jay Williams, took office and eventually withdrew Mayor McKelvey's edict. For the following reasons, we conclude that this case is now moot. Thus, the district court's opinion is **VACATED**, the appeal **DISMISSED**, and the case **REMANDED** to the district court with instructions to dismiss the case as moot.

## BACKGROUND

The *Business Journal* is a bimonthly newspaper of general circulation that regularly publishes articles covering the Youngstown city government. George M. McKelvey was the mayor for the city of Youngstown Ohio until his term ended at the end of the 2005 calendar year. The *Business Journal* has published numerous articles about Mayor McKelvey and his official actions.

Beginning in February 2003, the *Business Journal* began publishing news articles criticizing Mayor McKelvey's agreement to purchase land for a proposed convocation center at a price allegedly higher than its value. In February of 2003, following the *Business Journal*'s first article criticizing Mayor McKelvey, he issued an oral directive to various city officials instructing them not to speak to reporters from the *Business Journal*. Shortly after issuing this directive, Mayor McKelvey sent a fax to the *Business Journal* demanding an apology for its reporting on the land deal and accusing them of "low standards of journalistic integrity". J.A. 153-54. In response, the

2

*Business Journal* published an article detailing the Mayor's demand for an apology but standing by all the factual allegations in the article at issue.

The *Business Journal* became aware of the oral directive in March or April of 2003 after repeatedly being denied information from city officials. As a result of this lack of information from city officials, the newspaper filed a series of public records requests to obtain information on the convocation center project. After the city failed to produce all the records, the *Business Journal* initiated mandamus proceedings to compel the city to release the records. The mandamus proceedings resulted in an order on December 22, 2004, and the city complied with the records requests.

In January 2004, the *Business Journal* published another article on the proposed land acquisition of the convocation center. The newspaper reported that it was likely it would not go through due to misguided business judgment. In this article, the *Business Journal* also reported on their legal struggle with the city to obtain public documents.

Two years after the Mayor issued his oral directive, and two months after the Magistrate entered an order in the mandamus action, on February 4, 2005, the Mayor sent out a letter, or rather, an edict, to the journal's editor. The edict states:

> The following statements accurately reflect my policy and philosophy regarding the separate issues of *Public Records* and *Speaking to the Press.* Any representation to the contrary should be considered a reckless disregard of the truth or falsity of the statement; irresponsible; a distortion of my comments; and being made with "actual malice."
>
> *Public Records*
>
> As Mayor of the City of Youngstown I have always recognized that Ohio's Public Records Act requires the City of Youngstown to make available all public records to any person, unless the record falls within one of the statute's enumerated exceptions. As Mayor of the City of Youngstown (since January 1, 1998) I have

3

always expected 100% compliance with Ohio's Public Records Act. I have always required my employees to adhere to my policy and philosophy that public records are the people's records. The aforementioned policy and philosophy *shall continue* throughout my tenure as Mayor of Youngstown.

*Speaking to the Press*

As Mayor of Youngstown, I do not dispute that I have instructed members of my administration not to make statements to the *Business Journal except to fulfill the City's obligations regarding public records requests...*I have made the determination that City administrators and employees may not comment to *The Plaintiffs* on behalf of the City.

Since instituting this no-comment policy, City employees contacted by the *Business Journal* have refused to speak with its reporters.

On February 24, 2005, the *Business Journal*, Youngstown Publishing Company, Andrea Wood, W. Daniel O'Brien, George Nelson and Dennis LaRue ("Plaintiffs" or "*The Business Journal*") brought this action against Mayor McKelvey and the city he leads, Youngstown, Ohio ("City" or "Defendants") requesting a preliminary and permanent injunction preventing the Mayor from implementing his policy. The complaint also requested attorney's fees and costs, and "such other relief that the Court deems necessary and appropriate." J.A. at 8. On March 18, 2005, the City filed its opposition to the motion for the preliminary injunction and moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim. Finding no first amendment rights at issue, the district court granted the City's motion to dismiss and denied the Plaintiffs' motion for a preliminary injunction. Plaintiffs filed this timely appeal.

On January 1, 2006, a new mayor, Jay Williams, took office. At oral argument counsel for Defendants admitted that approximately two weeks prior to oral argument, Mayor Williams formally rescinded Mayor McKelvey's edict and that the *Business Journal* received a copy of a memorandum to city personnel stating that former Mayor McKelvey's personal policy not to speak with the

4

*Business Journal* no longer exists. In view of this development the court requested briefs on whether the controversy was moot.

## I. Mootness

Under the "case or controversy" requirement in Article III of the United States Constitution, federal courts only have jurisdiction to decide cases that affect the rights of litigants. *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001). Thus, as a preliminary matter we must first determine whether this case is moot as Mayor McKelvey's edict no longer exists. The Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, "the question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694 (1974) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510 (1941)). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." *Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992) (quotation omitted). "The mootness inquiry must be made at every stage of a case; thus, if a case becomes moot during an appeal, the judgment below must be vacated and the case remanded with instructions to dismiss." *McPherson v. Mich. High School Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (en banc).

Plaintiffs argue that this case is not moot under both the voluntary cessation doctrine and the capable of repetition yet evading review exception to mootness. Additionally, Plaintiffs also contend that they stated a claim for damages in their Complaint and that that claim survives even

5

if a claim for injunctive relief does not. We address each of Plaintiffs' arguments in turn and, for the following reasons, we find the case is moot.

### A. Voluntary Cessation

"[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070 (1982). Yet, while "voluntary cessation of wrongful conduct does not automatically render a case moot, the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir.1990) (citation and quotation marks omitted).

The party asserting mootness bears a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to stand up again." *U.S. v. Dairy Farmers of America, Inc.*, 426 F.3d 850, 857 (6th Cir. 2005) (citation and quotation marks omitted). The reasoning behind this "heavy burden" is simple: courts want to "protect a party from an opponent who seeks to defeat judicial review by temporarily altering its behavior." *U.S. v. City of Detroit*, 401 F.3d 448, 451 n. 1 (6th Cir. 2005) (citing *City News & Novelty, Inc. v. City of Waukesha,* 531 U.S. 278, 284 n. 1 (2001)). Otherwise, "the courts would be compelled to leave '[t]he defendant...free to return to his old ways.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 10, 102 S.Ct. 1070 (1982)).

In this case, there is simply no indication that the new mayor of Youngstown, Mayor Williams, will return to the "old ways" of Mayor McKelvey and issue a similar edict. At oral argument, Plaintiffs' counsel stated that Mayor McKelvey's edict no longer exists and that the

6

*Business Journal* had not, up to that point, had any problems with the new mayor of Youngstown nor his administration. Had Mayor McKelvey - rather than Mayor Williams - revoked the edict during this litigation, then we would be more inclined to find that such an act was done to defeat judicial review. Yet we find the edict was revoked not to defeat litigation, but simply due to a change in circumstances.

Notably, the edict was removed by a government official, Mayor Williams, rather than a private party. We have previously pointed out that:

> [T]here appears to be a difference in the way voluntary cessation of illegal activities is treated when the offending parties are government officials rather than private parties:
>
> We note additionally that cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties. According to one commentator, such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.

*Mosley*, 920 F.2d at 415 (citing 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.7 (2d ed)). Especially given the circumstances surrounding the revocation in this case, we have no reason to doubt the genuineness of Mayor William's revocation of Mayor McKelvey's edict.

Finally, with respect to Plaintiffs' retaliation claim, arguably the only claim we have jurisdiction to hear,[1] we find that it is even more unlikely that this situation will recur. In their

---

[1] In addition to their retaliation claim, Plaintiffs also raise a facial challenge to the edict. However, this challenge was not raised by Plaintiffs in their initial complaint, nor addressed by the district court; it was only mentioned in their Motion for A Preliminary Injunction and their Memorandum in Support of their opposition to Defendants' Motion to Dismiss. We note courts are generally hesitant to entertain an argument ignored by the district court that was mentioned only in a party's brief, and not plead in the complaint. *See McClintock v. Eichelberger*, 169 F.3d 812 (3d Cir. 1999) (where appellants briefed an argument at the district court level but did not plead it, the

7

retaliation claim, Plaintiffs argue that the Mayor unlawfully retaliated against them for exercising their right under the First Amendment to publish articles criticizing the Mayor. Thus, for the allegedly illegal conduct to recur, the *Business Journal* would first have to publish articles criticizing Mayor Williams and Mayor Williams would then, in retaliation, have to issue a similar edict. There is no evidence that the *Business Journal* has even published an article criticizing Mayor Williams, let alone evidence that Mayor Williams is planning on re-issuing Mayor McKelvey's edict in retaliation.

Thus, we conclude that the City has carried its burden in this case in showing there is no reasonable likelihood "that the wrong will be repeated." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953).

### B. Capable of Repetition Yet Evading Review

Plaintiffs also argue that the challenged conduct is capable of repetition yet evading review. This exception to the mootness doctrine applies where: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003); *Weinstein v. Bradford,* 96 S.Ct. 347, 349 (1975).

---

court refused to consider the argument); *Meade v. Pension Appeals and Review Comm.*, 966 F.2d 190 (6th Cir. 1994) (noting that where the district court does not address an argument, we need not address it on appeal). Yet, as we find that all the Plaintiffs' claims are moot, we need not decide whether the Plaintiffs' sufficiently raised this facial challenge in the court below.

We need not address whether Plaintiffs' challenged action satisfies the first requirement, as we find it fails to meet the second. Obviously, the analysis regarding whether a challenged act is "capable of repetition," *Rosales-Garcia*, 322 F.3d at 386, overlaps with the above discussion regarding whether Plaintiffs have "no reasonable expectation that the wrong will be repeated," *Mosley*, 920 F.2d at 415. Again, as discussed, there is no indication that Mayor Williams will re-issue Mayor McKelvey's edict. Plaintiffs cannot point to any evidence suggesting that Mayor Williams is even considering such a ban. Plaintiffs argue that they are now in a "tenuous position" requiring them to weigh their right to criticize the City with the alleged threat of another exclusionary edict. Yet, while we sympathize with Plaintiffs' position, we find that Plaintiffs have failed to explain <u>why</u> they fear a similar edict will be issued. Plaintiffs simply claim that because the City has maintained throughout this litigation that the challenged act was lawful and because the *Business Journal* continues to scrutinize public actions, it is likely that another edict will be issued. Such bare allegations fail to establish a "reasonable expectation that the same complaining party will be subject to the same action again." *Rosales-Garcias*, 322 F.3d at 386.

Thus, for these reasons and those discussed in I.A., we find that Plaintiffs have not established that the challenged conduct meets the requirements of the capable of repetition, yet evading review exception to mootness.

### C. Monetary Damages

Finally, Plaintiffs contend that in addition to stating a claim for injunctive relief, they also stated a claim for damages. While a claim for injunctive relief may be mooted, a viable claim for past infringement of a constitutionally protected right survives. *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 387 (6th Cir.2005). Plaintiffs maintain that because they stated a valid §1983 claim,

9

because damages may be awarded pursuant to that claim, and because they requested "such other relief that the Court deems necessary and appropriate" that they requested damages. J.A. at 8.

When asserted to avoid mootness, courts are reluctant to find that a party stated a claim for damages. Courts will not "conjure up a damages claim where none exists." *Seven Words LLC v. Network Solutions,* 260 F.3d 1089, 1097 (9th Cir. 2001); *Harris v. City of Houston,* 151 F.3d 186, 191 (5th Cir.1998) (where "as a tactical matter, the appellants limited...their pleading and arguments solely [to injunctive relief]," the court held the case was moot as they would "not second-guess their original trial strategy, nor conjure up relief independent of the record.").

This is especially true when that party failed to assert a damages claim in the court below. *Donkers v. Simon*, 2006 WL 901874, 3 (6th Cir. 2006) (where a complaint sought only declaratory and injunctive relief, court found it "could not invent requests for damages that the plaintiff did not make, particularly at this point in the litigation," to avoid mootness); *James Luterbach Const. Co., Inc. v. Adamkus,* 781 F.2d 599, 602 (7th Cir. 1986) ("In an attempt to avoid mootness, Luterbach asks for damages for the first time on appeal. We will not consider Luterbach's prayer for damages because it was not brought before the district court"); *Boucher v. Syracuse University,* 164 F.3d 113, 118 (2d Cir. 1999) (quoting *McCabe v. Nassau County Med. Ctr.,* 453 F.2d 698, 702 (2d Cir.1971) ("A request for damages, however, will not avoid mootness if it was 'inserted after the complaint was filed in an attempt to breathe life into a moribund dispute.'").

As indicated by the Supreme Court, a claim for damages, "extracted late in the day from [a] general prayer for relief and asserted solely to avoid otherwise certain mootness, [bears] close inspection." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 71, 117 S.Ct. 1055, 1070-1071 (1997). In *Fox v. Bd. of Trs. of State Univ. of N. Y.*, the plaintiffs similarly argued that they stated

10

a claim for damages in their Complaint by requesting, "such other relief as the Court deems just and proper," and thus the case was not moot. 42 F.3d 135, 141-42 (2d Cir.1994), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2634 (1995). The court found the plaintiffs contention failed "primarily because there is absolutely no specific mention in the Complaint of nominal damages." 42 F.3d 135, 141-42 (citation, quotation and alteration marks omitted). The court further explained, "[w]e are especially reluctant in these circumstances to read a damages claim into the Complaint's boilerplate." *Id.* at 142.

Upon "close inspection" we find that Plaintiffs claim for damages was raised for the first time on appeal, that there is no specific mention in the complaint for damages, and that Plaintiffs raised this claim to avoid mootness. *Arizonans,* 520 U.S. at 71. Under such circumstances, we too are "especially reluctant" to read in a general prayer for relief a specific claim for damages. Thus, as Plaintiffs have not provided this court with any reason to overcome such reluctance in this case, we find that Plaintiffs' "late in the day" plea for damages "cannot genuinely revive the case." *Id.* at 1071.

**CONCLUSION**

For the foregoing reasons, we **DISMISS** the appeal as moot and we **VACATE** the district court's opinion. We **REMAND** this case to the district court with instructions that the case be dismissed as moot.

11

**R. GUY COLE, JR., concurring.** I agree with much of the majority's thoughtful opinion and write separately only to stress that this is a unique case, unlikely to recur. Any one of a number of small deviations from the facts before us would, in my opinion, necessitate that this Court reach the merits of plaintiff's claim under the voluntary cessation exception to mootness.

As the Supreme Court and the majority noted, "[i]t is well-settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). At issue in *City of Mesquite* were two sections of a municipal licensing ordinance governing coin-operated arcades. *Id.* at 284-85. Prior to oral argument, Mesquite revised the ordinance to eliminate the offensive statutory language. Because "[t]here [was] no certainty that a similar course would not be pursued if [Mesquite's] most recent amendment were effective to defeat federal jurisdiction," the Court declined to find the matter moot. *Id.*

"In accordance with this principle, the standard [the Supreme Court] has announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 189 (2002) (internal citations and quotations omitted); *see also United States v. Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005) (referring to the "heavy burden of persuasion" faced by a defendant asserting mootness based on voluntary cessation (quoting *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203 (1968))).

As the majority noted, were Mayor McKelvey, rather than his successor, Mayor Williams, to have revoked the no-comment policy, our analysis would be different. Mayor Williams' only

12

relationship with the no-comment policy has been one of apparent opposition. Not only did he officially revoke the policy, he did so in writing, and even sent a copy to *The Business Journal*. One questions whether Mayor Williams voluntarily terminated the policy at all, or whether he merely indicated the obvious: that, with Mayor McKelvey out of office, the policy was defunct.

That said, I would place decidedly less stock in the commentary, cited by this Court in *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990), and again by today's majority, to the effect that apparently genuine self-correction by a government official, without more, provides a secure foundation for a dismissal based on mootness. *Id.* at 415 (citing Wright, Miller & Cooper, 13A Fed. Prac. & Proc. § 3533.7 (2d ed)). This rule, if over-extended, could create an exception within an exception, shifting as though weightless the allegedly heavy burden back to the plaintiff to show disingenuousness. Such a shift is unwarranted: after all, official conduct was involved in *City of Mesquite* itself, an early, seminal, and heavily-cited voluntary cessation case. 455 U.S. at 289 ("In this case the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.").

Indeed, where the Supreme Court has declined to reach an issue as moot on the basis of official representation alone, it has specifically distinguished the context of voluntary cessation:

> There is a line of decisions in this Court standing for the proposition that the voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. These decisions and the doctrine they reflect would be quite relevant if the question of mootness here had arisen by reason of a unilateral change in the admissions procedures of the Law School.

13

*DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (internal citation omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) ("We have before us more than a mere voluntary cessation of allegedly illegal conduct.") (internal quotation omitted).

I note also that were Mayor McKelvey's edict to reach the citizens of Youngstown, rather than just its employees, or were his no-comment policy broader than a personal reaction to criticism, then Mayor McKelvey's conduct might be imputed to the City itself. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[O]fficials whose acts or edicts may fairly be said to represent official policy, . . . may give rise to municipal liability under § 1983. Indeed, any other conclusion would be inconsistent with the principles underlying § 1983.") (internal quotation omitted). In contrast to the new mayor, the City has, according to its representations before this Court, steadfastly asserted the propriety and legality of the no-comment policy as a reaction to negative press. Thus, the City would not, in my view, overcome its burden to make "it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189.

With these qualifications in mind, I concur in the majority opinion.