**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARIAN OLSON, d/b/a BANNACK
PUBLISHING CO.,

      Plaintiff - Appellant,

v.

THE CITY OF GOLDEN, a Colorado
Home Rule Municipal Corporation,

      Defendant - Appellee.

No. 11-1454
(D.C. No. 1:07-CV-01851-MSK-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY, EBEL,** and **MATHESON,** Circuit Judges.

Plaintiff-Appellant Marian Olson appeals the district court's denial of her facial

and as-applied constitutional challenges to campaign finance regulations implemented by

Defendant-Appellee the City of Golden, Colorado (the "City"). See Golden Municipal

Code § 1.05. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we VACATE, as an

advisory opinion on a moot issue, the portion of the district court's decision denying on

its merits Olson's challenge to the City's application of the campaign finance regulations

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to the October 2005 issue of Olson's newsletter, the Voice of Golden, and we REMAND

that claim to the district court with instructions to dismiss it as moot.  But, for the reasons

discussed below, many of which are the same as those given by the district court, we

AFFIRM the district court's denial of all of Olson's other claims.

## BACKGROUND

The opinion below contains a thorough rendition of the facts, see Olson v. City of

Golden, 814 F. Supp. 2d 1123, 1126-28 (D. Colo. 2011), so we provide only a brief

summary here.  Appellant Olson, d/b/a Bannack Publishing Company, publishes the

Voice of Golden (the "Voice"), an "alternative newspaper" that Olson distributes free of

charge to around 7,300 residences within the city limits of Golden.  According to Olson,

the Voice encourages Golden residents to "pay attention to" and "get involved" in local

issues affecting the community, and it provides a forum for viewpoints underserved by

Golden's mainstream papers.  Aplt. App. at 1926.

Around 2005, the City passed Golden Municipal Code § 1.05, entitled "Local

Campaign Finance – Reporting Requirements," (the "Ordinance") which requires, among

other things, that "[a]ny person making non-committee expenditures totaling more than

$50.00 . . . deliver notice in writing of such expenditures to the City Clerk not later than

three business days after the day that such funds are expended or services or materials

provided," Golden Municipal Code § 1.05.060, or be subject to a $50 per diem fine,

Golden Municipal Code § 1.05.090(8) (collectively, the "Disclosure Requirements").

The Golden Code also contains a provision, apart from the Ordinance but applicable

2

thereto, which allows the City to recover costs and fees associated with abating violations of the Ordinance (the "Fee-shifting Provision").  Golden Municipal Code § 1.01.150.

Several days after Olson published the October 2005 issue of the Voice, she received notice from a member of the Golden City Council that the contents of that issue triggered the Ordinance's Disclosure Requirements.[1]  In response, Olson submitted a report containing all the statutorily required information; however, a short time later, Olson withdrew her report based on her belief that the contents of the October 2005 issue did not trigger the Disclosure Requirements.  Pursuant to the procedure prescribed by the Ordinance, see Golden Municipal Code § 1.05.120, the City attempted to resolve the dispute with Olson first by agreement, but when it was unable to do so, it referred Olson's case to a special prosecutor, who then filed suit against Olson in municipal court. The parties eventually settled the municipal case out of court, after Olson agreed to report the expenses she incurred in connection with the October 2005 issue of the Voice, and the City agreed to dismiss its claim to collect attorney fees and costs from Olson.

---

[1] As noted by the district court, the October 2005 issue of the Voice contained

> (i) short articles about city council decisions, including background information and commentary; (ii) letters to the editor-one by a candidate for city council, three by candidates for the school board, and a fourth endorsing candidates for the school board election; (iii) a categorization of the city council candidates as either being "committed to putting citizens first" or who have "demonstrated a willingness to go along with those who have a connection to special interests;" (iv) a commentary on various ballot issues; and (v) a paid advertisement against a ballot issue.

Olson, 814 F. Supp. 2d at 1127.

Olson then filed suit in federal court under 42 U.S.C. § 1983, challenging the constitutionality of the Ordinance on its face and as applied to her. She argued primarily that (1) the Ordinance was overbroad and vague because it defined "expenditure" as speech "related to the support or opposition of any candidate, ballot issue, ballot question or issue" (the "related-to phrase"); and (2) several features of the Ordinance—including its Fee-shifting Provision and lack of any exemption for the press—unduly burdened and chilled speech in violation of the First Amendment.

With Olson's federal suit still pending, the City amended the Ordinance in 2010 (the "2010 Amendment"), replacing the challenged related-to phrase in the definition of "expenditure" with language capturing only speech "expressly advocating the election or defeat of any candidate, ballot issue, ballot question, or issue" (the "express-advocacy phrase"); the 2010 Amendment also added a provision exempting the press from compliance with the Disclosure Requirements. In supplemental briefing, Golden argued to the district court that the 2010 Amendment mooted Olson's facial claims. Without moving to amend her complaint or the pretrial order governing the dispute, Olson responded that the new reporting requirements remained constitutionally overbroad and the new press exemption was insufficient because it did not exempt the Voice from the Ordinance's Disclosure Requirements, and therefore that her facial challenge and claim for injunctive relief remained live for the court's consideration. The district court dismissed Olson's facial challenges to the Ordinance as moot and denied her as-applied challenges to the Ordinance on their merits.

## STANDARD OF REVIEW

This case was submitted to the district court on the parties' briefs without oral argument, on a stipulated record, and pursuant to a pretrial order agreed upon by the parties. The parties agree that the district court's order sufficiently resembles a grant of summary judgment that we apply the relevant legal standards de novo. See N.M. Youth Organized v. Herrera, 611 F.3d 669, 675 (10th Cir. 2010). We review the district court's construction of the pretrial order for an abuse of discretion. Trujillo v. Uniroyal Corp., 608 F.2d 815, 817 (10th Cir. 1979).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Because this case implicates the First Amendment, we have an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Golan v. Holder, 609 F.3d 1076, 1082-83 (10th Cir. 2010) (internal quotation marks omitted), aff'd, 132 S.Ct. 873, 2012 WL 125436 (Jan. 18, 2012).

## DISCUSSION

### I.     Mootness

Where, as here, a city amends a challenged ordinance in an effort to cure the constitutional infirmities alleged, the prior challenges to the ordinance become nonjusticiable as moot unless the new ordinance "is sufficiently similar to the repealed

5

[one] that it is permissible to say that the challenged conduct continues." Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000) (citing Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 & n.3 (1993)). "[A] superseding statute or regulation moots a case . . . to the extent that it removes challenged features of the prior law." Id. (quoting Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir.2000)). These rules reflect the principle that our decisions must "have some effect in the real world." Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir.1999) (internal quotation marks omitted).

### A. Olson's Challenges Involving the Related-to Phrase and the Lack of a Press Exemption Became Moot When the City Amended Those Provisions in 2010

Before the City amended the Ordinance in 2010, Olson advanced in her complaint, the pretrial order, and her briefs three primary arguments in support of her claim that the Ordinance was unconstitutional. First, Olson claimed that the Ordinance's use of the related-to phrase (more specifically, the terms "related to," "relative to," "support," and "opposition") in the definition of "expenditure" rendered the Ordinance unconstitutionally overbroad and vague; second, Olson claimed that the Ordinance was unconstitutionally overbroad because it captured within its sweep "communications that [were] not express advocacy or its functional equivalent, and . . . press publications and broadcasts," Doc. 71 at 31, as she claimed was illustrated by the City's application of the Ordinance to the October 2005 issue of the Voice, which Olson insists was non-regulable

6

both as speech of the "press" and speech that did not contain "express advocacy or its functional equivalent"; and third, Olson claimed that the Ordinance was not narrowly tailored because it was subject to the Municipal Code's Fee-shifting Provision.

When the City amended the Ordinance, however, it addressed Olson's first two claims directly, providing, as to each point, the very cure that Olson sought. First, the City redefined "expenditure" to mean, in relevant part, money spent on speech "for the purpose of expressly advocating the election or defeat of any candidate, ballot issue, ballot question, or issue." By its text, then, the Ordinance no longer employs any of the challenged terms found in the related-to phrase, and it no longer captures within its sweep "communications that are not express advocacy," see Doc. 71 at 31. Second, the 2010 Amendment exempted the press from the Ordinance's Disclosure Requirements. See Olson, 814 F. Supp. 2d at 1131-32. We conclude, then, that the 2010 Amendment created differences between the pre- and post-Amendment versions of the Ordinance that are so fundamental to Olson's first two arguments—indeed, which addressed the very "gravamen of [those] claim[s]," City of Jacksonville, 508 U.S. at 662—that to address them now would run afoul of the prohibition against advisory opinions.[2]

---

[2] Olson argues that the press exemption the City adopted does not cure the constitutional infirmities she has identified, in large part because the City has allegedly indicated that the Voice is not press, such that the City's "challenged conduct continues." Davidson, 236 F.3d at 1182. To that end, Olson emphasizes that she continues to report her expenses out of an abundance of caution. However, Olson points to nothing in the record that would indicate that the City has concluded, after the adoption of the new press exemption, that the press exemption does not apply to the Voice. Indeed, during oral argument, the City suggested that the Voice would likely fall within the press exception.

Continued . . .

7

That conclusion—that Olson's challenges to the related-to phrase and lack of a press exemption are moot—applies equally to her claim that the Ordinance, by virtue of the same infirmities, was unconstitutionally applied to the October 2005 issue of the Voice. That is because Olson never pursued damages in this case until she asserted, cursorily, a claim for nominal damages in her brief on appeal.[3] And while, for better or worse, precedent in this circuit dictates that a claim for nominal damages will satisfy Article III's case or controversy requirement on challenges to obsolete portions of a statute or ordinance, see Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1258-59 & n.4 (10th Cir. 2004), the circumstances of this case do not warrant applying that rule to a claim for nominal damages "extracted late in the day from [Olson's] general prayer for relief and asserted solely to avoid otherwise certain mootness,"[4] see Arizonans for Official English v. Arizona, 520 U.S. 43, 71, (1997);

---

Cont.

If the City concludes otherwise and again brings an action against the Voice, Olson can always bring suit again. At this juncture, however, and on this record, Olson's arguments regarding the continuing application of the press exemption are wholly speculative.

[3] Olson did include in her complaint a claim for attorney's fees under 42 U.S.C. § 1988, but "an interest in attorney's fees is insufficient to create an Article III case or controversy where a case or controversy does not exist on the merits of the underlying claim." Davidson, 236 F.3d at 1183.

[4] Olson maintains that she has always asserted a claim for nominal damages in connection with her as-applied challenge, but the record belies this argument. It is true that Olson asked for compensatory damages "to make [her] whole" in her Amended Complaint. Aplt. Reply Br. at 9 (citing Aplt. App. at ¶ 3). But "we will not consider claims abandoned in the district court," O'Connor v. City & Cnty. of Denver, 894 F.2d

Continued . . .

accord Youngstown Publ'g Co. v. McKelvey, 189 F. App'x 402, 408 (6th Cir. 2006)

(finding "that Plaintiffs' claim for [nominal] damages was raised for the first time on

appeal, that there is no specific mention in the complaint for [nominal] damages, and that

_____

Cont.

1210, 1214 (10th Cir. 1990), and we think it clear from the record that Olson abandoned her compensatory-damages claim as the case developed in the nearly ten months between when Olson filed her Amended Complaint (which reflected that Olson initially sought a full trial), and when the parties stipulated to the Second Proposed Pretrial Order, which "supersede[d] the pleadings and control[led] the subsequent course of litigation," Hullman v. Bd. of Trustees of Pratt Cmty. Coll., 950 F.2d 665, 667 (10th Cir. 1991) (citing Fed. R. Civ. P. 16(e)).

Olson stresses that the Second Proposed Pretrial Order contained no mention of remedies, except to say that "claims for relief will be re-characterized as remedies based upon the Court's guidance." Doc. 66 at 7 ¶ 5. However, the record provides significant insight into the remedies Olson sought after the parties agreed to try this case on the briefs and a stipulated record. For example, at the pretrial conference, Olson's attorney mentioned her requests for declaratory and injunctive relief, as well as for attorneys' fees, but made no mention of damages; and in her briefing before the district court, Olson never mentioned damages, although she requested that the court "declare Golden Municipal Code §§ 1.05.010(h), 1.05.010(g), and 1.01.150(g) unconstitutional, enjoin the city from unconstitutionally enforcing the Code against Marian Olson, grant attorney fees as requested by Olson, and provide such other relief as proper." Doc. 71 at 50 (emphasis added); cf. Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1098 (9th Cir. 2001) (declining "to read a damages claim into [the plaintiff]'s complaint," which contained only a "general prayer for relief"). Furthermore, Olson's arguments before this Court, which focus entirely on her alleged claim for nominal damages and never so much as mention a claim for compensatory damages, corroborate our view that she abandoned any compensatory-damages claim.

To that end, Olson insists that "Golden . . . admit[ted in its Supplemental Briefing Regarding Mootness] that Olson's claim for nominal damages based on the unconstitutional application of the unamended ordinance to her [was] not moot." Aplt. Br. at 21. But it was Olson's responsibility, not the City's, to raise and preserve Olson's claim for nominal damages. And Olson points to no place in the complaint or the record, and we find none, where she raised—much less argued—a claim for nominal damages.

9

Plaintiffs raised this claim to avoid mootness"). Thus, to the extent that the district court addressed that issue, see Olson, 814 F. Supp. 2d at 1132-38, we must vacate that portion of the court's opinion as advisory, because it can "have [no] effect in the real world," Becker, 186 F.3d at 1266.

In sum, we agree with the district court that, as to Olson's arguments regarding the related-to phrase and the lack of a press exemption discussed above, "the differences between the [ordinances] are too numerous and too fundamental to preserve our jurisdiction," Davidson, 236 F.3d at 1182.[5] However, we also conclude that under the circumstances here, "[a]ny judgment on the constitutionality of [the old portions of the ordinance as applied to the October 2005 issue of the Voice] would . . . be of no legal effect [as measured against Olson's claims in this case]," Utah Animal Rights Coal., 371 F.3d at 1257, and so we conclude that the district court's discussion about the constitutionality of those amended provisions as they were applied to the October 2005 issue of the Voice must be vacated.[6]

---

[5] To that end, we also conclude that Olson's claim, that the Ordinance's "continued application to Olson and . . . its continuing infirmities show that Olson's speech remains burdened," Aplt. Br. at 33-35, is moot. Again, Olson never sought to amend her complaint or the pretrial order to sharpen this argument for the district court's resolution, see Olson, 814 F. Supp. 2d at 1131 (identifying Olson's failure to develop such a challenge), and we think it unwise to address this complex claim at this juncture, in light of the extensive changes to the Ordinance we have already discussed.

[6] Olson also argues that her claims involving the amended provisions are not moot because of the "history of Golden's legislative evasions in past litigation related to Olson." Aplt. Br. at 33. We reject that argument. See Utah Animal Rights Coal., 371 F.3d at 1257 (holding that the mootness exception when a violation is "capable of

Continued . . .

10

## II.    Olson's Remaining Claims

### A. Olson's Claims that the Fee-shifting Provision and $50 Reporting Threshold Are Unduly Burdensome

Olson's only remaining substantive claims involve provisions of the Ordinance that were not affected by the 2010 Amendment. Specifically, Olson argues that (1) the 2010 Amendment left intact the Ordinance's unduly burdensome $50 reporting threshold; and (2) the 2010 Amendment left intact the Ordinance's unduly burdensome Fee-shifting Provision. It is not entirely clear from Olson's briefing whether she challenges these provisions facially or as they apply to her, but the Supreme Court recently stated that the distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." Citizens United v. FEC, 130 S. Ct. 876, 893 (2010). Thus, we have recognized that for both facial and as-applied challenges, "[t]he relevant constitutional test . . . remains the proper inquiry." Doe v. City of Albuquerque, 667 F.3d 1111, 1127 (10th Cir. 2012). In cases such as this one, which involve challenges to the constitutionality of disclosure requirements, the relevant constitutional test is "exacting scrutiny," which "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Doe v. Reed, 130 S. Ct. 2811, 2818 (2010) (quoting Citizens United, 130 S.Ct. at 914)).

---

Cont.

repetition, yet evading review" is "inapplicable . . . where the Ordinance has been amended to cure the alleged constitutional problem").

"To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." Id. (internal quotation marks omitted).

In this case, however, we are not presented with an occasion to apply exacting scrutiny to the two remaining provisions Olson identifies. That is because Olson never raised properly her disputes to these provisions before the district court. "Whether to address [an] argument despite the litigant's failure to raise it below is subject to this court's discretion based on the circumstances of the individual case." United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007). We will exercise our discretion to hear such issues "only in the most unusual circumstances." Id. at 1202. Usually, this will be "where the argument involves a pure matter of law and the proper resolution of the issue is certain." Id. ("[I]n these situations . . . no additional findings of fact or presentation of evidence [are] required for the issue's disposition . . . ."). And that is not our case.

Olson raised her undue-burden argument as to the Ordinance's $50 reporting threshold—which Olson characterized at oral argument as her "primary" qualm with the Ordinance as amended—for the first time in her Response to Golden's Supplemental Briefing Regarding Mootness, several years after Olson filed her complaint and the parties agreed to the pretrial order and filed their opening and response briefs before the district court. See Olson, 814 F. Supp. 2d at 1131. Olson has not offered any explanation for her failure to raise this argument sooner, in spite of the fact that it was available and should have been apparent to her at the time she filed her complaint. Importantly, at oral

argument, the City pointed out that because Olson raised her challenge to the $50 threshold after the close of discovery, the City had never been given a sufficient opportunity to develop the record on the appropriate tailoring or substantiality of its interest in such a threshold. The City maintains that, given the opportunity, it could show that the $50 threshold is appropriate in the context of small-scale, local elections like those that take place in Golden. We agree that in this case, the record is not sufficiently developed, and the proper resolution of the issue too uncertain, to justify making an exception to our general rule that arguments not raised properly below will not be considered on appeal. See Jarvis, 499 F.3d at 1201.

As to Olson's argument that the Municipal Code's Fee-shifting Provision is unduly burdensome, the district court construed this argument as outside of the scope of the pretrial order. Olson, 814 F. Supp. 2d at 1126 (acknowledging that Olson's opening brief included argument on the constitutionality of the Fee-shifting Provision, but declining to address that argument because it "was not included in the Proposed Final Pretrial Order"); see also Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . ."). In the Tenth Circuit, a "definitive pre-trial order reflecting the agreement of the parties, having been entered into after full discovery, must, of course, control the subsequent course of the action." Trujillo v. Uniroyal Corp., 608 F.2d 815, 817 (10th Cir. 1979) (citing, e.g., F.R.Civ.P. 16(6)). And "[i]f there is a properly drawn, detailed pretrial order, a trial court's determination that

13

certain facts or issues must be excluded from trial on the basis of a pretrial order may be reversed only if there is an abuse of discretion." Id. at 817-18.

Here, we conclude that the district court did not abuse its discretion when it concluded that Olson's Fee-shifting Provision argument fell outside of the scope of the pretrial order. The pretrial order contains no mention of the Fee-shifting Provision, or of any other portion of the Golden Municipal Code except for its "campaign finance regulations." Importantly, the Fee-shifting provision is not a part of Golden's campaign finance regulations, which are found at Golden Municipal Code § 1.05 (entitled "Local Campaign Finance – Reporting Requirements"). Instead, the Fee-shifting Provision is located at Golden Municipal Code § 1.01.150 (entitled "Civil enforcement"), and it applies to all violations of the entire municipal code "except the provisions of Title 8 pertaining to public peace and safety." While we might have reached a different conclusion as to whether Olson's Fee-shifting Provision argument fell within the scope of the pretrial order than did the district court, we cannot say the district court's construction of the pretrial order was an abuse of the court's discretion.

In sum, we conclude that, at this time, an exacting-scrutiny analysis of the Ordinance is inappropriate, because Olson's only remaining non-moot substantive arguments—regarding the $50 reporting threshold and the Fee-shifting Provision—were not presented properly to the district court, and we see no reason to make an exception to our general rule that arguments not raised below will not be considered on appeal. See Jarvis, 499 F.3d at 1201; see also Trujillo, 608 F.2d at 817-18; ACORN v. Municipality

14

of Golden, 744 F.2d 739, 746 (10th Cir. 1984) ("[D]uly enacted laws are ordinarily presumed constitutional. . . .").

## B. Olson's Claim for Attorney's Fees Under § 1988

Olson's only remaining claim is that her claim for attorney fees under 42 U.S.C. § 1988 "is not moot even if all of her pre-amendment claims are moot," Aplt. Br. at 21; see Davidson, 236 F.3d at 1183 ("[T]he expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred."). Where, as here, a district court makes no determination on the merits of a claim due to a defendant's voluntary act, "a plaintiff may prevail for attorneys fee purposes if he can . . . show (1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." Collins v. Romer, 962 F.2d 1508, 1512 (10th Cir. 1992) (internal quotation marks omitted) (alteration in original). A plaintiff can meet the "required by law" prong by showing that the defendant's act was "not a wholly gratuitous response to an action that in itself was frivolous or groundless." Id. at 1513 (internal quotation marks omitted).

However, Olson admits she never moved for attorney fees in connection with the City's amendment to the Ordinance. See Aplt. Br. at 22 ("By surprisingly entering judgment on even claims that Golden admitted were live, the district court prevented Olson from seeking her pre-amendment attorney fees, which covered the significant summary-judgment briefing and discovery that occurred nearly two years before Golden asserted that Olson's claims were moot."). We disagree that the district court's entry of

15

judgment was "surprising[]," and Olson offers no explanation for why she failed to move for attorney's fees after she discovered that the City had amended the Ordinance.  See Davidson, 236 F.3d at 1183 ("Our jurisdiction is based on our power to review 'final decisions of district courts.'  28 U.S.C. § 1291.  Without a final decision from the district court as to whether Plaintiffs are entitled to fees, the question is not before this court.").

## CONCLUSION

For the foregoing reasons, we VACATE, as advisory, the portion of the district court's decision denying Olson's as-applied challenge to the October 2005 issue of the Voice, on its merits, see Olson, 814 F. Supp. 2d at 1132-38, and we remand that claim to the district court with instructions to dismiss it as moot.  We AFFIRM the court's denial of all of Olson's other claims.

Entered for the Court


David M. Ebel
Circuit Judge

16