NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0243n.06

No. 20-3063

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

CERTAIN UNDERWRITERS AT LLOYD′S OF LONDON SUBSCRIBING TO POLICY NO. HMPL 18-0164 AND HMPL 17-0158,

    **Plaintiff–Appellee,**

v.

KG ADMINISTRATIVE SERVICES, INC.,

    **Defendant–Appellant,**

JP EXPRESS SERVICE, INC.; RAINS & SONS TRANSPORTATION, LLC; RAINS & SONS HEALTH CARE BENEFIT PLAN; SOUTHERN ILLINOIS MOTOR XPRESS, INC.; TRUCKS FOR YOU, INC.

    **Defendants.**

</td><td>

**FILED**
May 14, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**OPINION**

</td></tr>
</table>

**Before: MOORE, COOK, and STRANCH, Circuit Judges.**

MOORE, J., delivered the opinion of the court in which STRANCH, J., joined, and COOK, J., joined in part. COOK, J. (pp. 20–22), delivered a separate opinion dissenting in part.

**KAREN NELSON MOORE, Circuit Judge.** Defendant KG Administrative Services, Inc. ("KG") appeals from a judgment against it after the district court issued an order granting Plaintiff Certain Underwriters at Lloyd's of London Subscribing to Policy No. HMPL 18-0164 and HMPL 17-0158's (the "Underwriters") motion for judgment on the pleadings. The district court's judgment rescinded an errors and omissions insurance policy that the Underwriters issued to KG and declared that the Underwriters have no duty to defend KG under that policy with respect

No. 20-3063, *Certain Underwriters at Lloyd's of London v. KG Admin. Servs., Inc. et al.*

to three lawsuits against it and a fourth demand letter. For the reasons that follow, we **REVERSE** in part, **AFFIRM** in part, and **REMAND** for further proceedings.

## I. BACKGROUND

*The Parties*. KG is in the business of providing third-party administration of self-funded health benefits plans. R. 1 (Compl. at ¶ 3) (Page ID #2); R. 33 (Answer at ¶ 3) (Page ID #787). The Underwriters "are those Certain Underwriters at Lloyd's London who are members of Lloyd's Syndicates: 1084, 0609, 1225, 2001, 4020, and 0435" subscribing to two insurance policies issued to KG. R. 1 (Compl. at ¶ 1) (Page ID #2).

*The Policies.* This appeal primarily concerns a "a claims-made and reported errors and omissions coverage certificate of insurance" that the Underwriters issued to KG "effective January 1, 2019 to January 1, 2020" (the "2019-2020 Policy"), which was a renewal of an earlier policy "with a certificate of insurance period of January 1, 2018 to January 1, 2019" (the "2018-2019 Policy"). R. 1 (Compl. at ¶ 9) (Page ID #3)[1]; R. 33 (Answer at ¶ 9) (Page ID #788). The 2019-2020 Policy covers "claim[s] first made against [KG] and reported in writing to the Underwriters during the Certificate of Insurance Period . . . by reason of an act or omission including personal injury in the performance of professional services by [KG]." R. 1-2 (2019-2020 Policy at 1) (Page ID #32); R. 33 (Answer at ¶ 44) (Page ID #793) (policy speaks for itself). It provides that "as a condition precedent to the obligations of the Underwriters under this Certificate of Insurance, [KG] will give written notice to the Underwriters as soon as reasonably possible during the Certificate

---

[1] The two policies bold certain language to indicate defined terms. We have removed that emphasis when quoting from the policies and indicate the significance of the defined terms in the text.

2

of Insurance Period of any claim made against [KG]." R. 1-2 (2019-2020 Policy at 6) (Page ID #37).

The 2019-2020 Policy defines its key terms as follows. "Professional services" means "[t]hird [p]arty [a]dministration services" provided by KG for a fee. R. 1-2 (Policy at 1, 5) (Page ID #29, 36). The "Certificate of Insurance Period" means January 1, 2019 to January 1, 2020. *Id.* at 1, 3 (Page ID #29, 34). And a "claim" is "a demand for money or services naming [KG] arising out of an act or omission in the performance of professional services. A claim includes the service of suit or the institution of an arbitration proceeding against [KG]." *Id.* at 3 (Page ID #34). The 2019-2020 Policy specifically excludes from coverage different types of claims. For example, it excludes coverage for any claim "arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act[s] or omission[s] by [KG]," *id.* at 5 (Page ID #36), and any claim "[b]ased on or arising out of liability of others assumed by [KG] under any contract or agreement," *id.* at 6 (Page ID #37).

***The Underlying Lawsuits Against KG.*** Prior to KG renewing the 2018-2019 Policy for 2019-2020, three lawsuits were filed against it. First, in *JP Express Service, Inc. v. KG Administrative Services*, No. 8:18-cv-00134 (C.D. Cal. 2018), filed on January 23, 2018, the plaintiff alleged that it contracted with KG to administer its self-insured health plan and brought claims against KG arising from its deficient administration of the plan, sounding in breach of fiduciary duty, conversion, contract, negligence, and fraud, among others. *See generally* R. 1-5 (*JP Express* Compl.) (Page ID #94); R. 33 (Answer at ¶¶ 14–15) (Page ID #789) (complaint speaks for itself). Second, in *Rains & Sons Transportation, LLC v. Keiser Group, LLC*, No. 5:18-cv-00507 (W.D. Okla. 2018), filed on May 23, 2018, the plaintiff alleged that it contracted with KG

to administer its self-insured health care plan and brought various claims against KG relating to those services, sounding in breach of fiduciary duty, contract, conversion, and others. *See generally* R. 1-6 (*Rains & Sons* Compl.) (Page ID #118–36); R. 33 (Answer at ¶¶ 18–19) (Page ID #789). Third, in *Southern Illinois Motor Xpress, Inc. v. KG Administrative Services, Inc.*, No. 3:18-cv-02067 (S.D. Ill. 2018), filed on November 9, 2018, the plaintiff ("SIMX") brought claims against KG arising from its deficient administration of its employees' healthcare benefits, sounding in fraud and defamation. *See generally* R. 1-7 (*SIMX* Compl.) (Page ID #137–46); R. 33 (Answer at ¶¶ 23–24) (Page ID #790).

*KG's "Warranty Statement."* Despite the three lawsuits, on January 11, 2019 and as part of its renewal application, KG submitted a "warranty statement" from its President, Robert C. Frazier, Jr., which provided: "After inquiry I, nor any principal, partner, director, officer or professional employee have any knowledge or information of any act, error, omission, fact, circumstance or contentions of any incident which may give rise to a claim being made against us." *See* R. 1-10 (Warranty Statement) (Page ID #152). Prior to submitting the "warranty statement," KG submitted an application form acknowledging that (1) if a certificate of insurance issued, "the Underwriters will have relied upon, as representations, this application . . . and any other statements furnished to the Underwriters in conjunction with this application, all of which are hereby incorporated by reference into this application and made a part thereof"; (2) that the application would be "the basis of the contract and will be incorporated by references into and made part of such certificate"; and (3) KG's

> failure to report to the Underwriters any claim made against it during the current certificate term, or act, omission or circumstances which the Applicant is aware of which may give rise to a claim before the expiration of the current certificate may create a lack of coverage for each Applicant who had a basis to believe that any

4

such act, error, omission or circumstance might reasonably be expected to be the basis of a claim.

R. 1-9 (Application at 2) (Page ID #151). The 2019-2020 Policy incorporates the application and "warranty statement," and provides that: (1) "All of the information and statements provided to the Underwriters by [KG] . . . constitute material representations"; (2) the policy was issued "in reliance upon [KG's] representations"; and (3) "[a]ny material misrepresentation or concealment by [KG] . . . will render the [c]ertificate of [i]nsurance null and void and relieve the Underwriters from all liability herein." R. 1-2 (Policy at 8-9) (Page ID #39–40).

*KG Seeks Coverage.* KG notified the Underwriters of the *JP Express*, *Rains & Sons*, and *SIMX* lawsuits in April 2019. R. 1 (Compl. at ¶ 64) (Page ID #15); R. 33 (Answer at ¶ 64) (Page ID #796). KG takes the position that it realized that the three lawsuits constituted "claims" within the meaning of the Policy only around that time. Appellant's Br. at 5. KG asserts that it "was not initially clear when the lawsuits were filed" that they constituted claims, but that it "later recognized that there should be coverage under [the Underwriters'] policy." *Id.* at 5–6.

Shortly thereafter, on May 2, 2019, KG notified the Underwriters of a demand letter it received from Trucks4U, Inc. ("TFU"), which was itself dated April 2, 2019 (the "TFU demand"). R. 1 (Compl. at ¶¶ 31, 33) (Page ID #7); R. 33 (Answer at ¶¶ 31, 33) (Page ID #791). The TFU demand informed KG that TFU was considering bringing an action for breach of fiduciary duty, breach of contract, fraud, conversion, and unfair business practices based on conduct similar to that alleged in the three lawsuits discussed above. R. 1-8 (TFU demand at 2) (Page ID #148).

*This Lawsuit.* The Underwriters brought suit against KG on May 31, 2019, asserting a claim for rescission of the 2019-2020 Policy and claims for a declaration that it has no duty to defend KG under either the 2019-2020 or 2018-2019 Policies with respect to the three lawsuits

and the TFU demand letter. R. 1 (Compl. at ¶¶ 52–113) (Page ID #14–20). When KG failed to respond to its complaint, the Underwriters moved for default judgment and separately for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). R. 15 (Mot. Default J.) (Page ID #675–78); R. 16 (Mot. J. on the Pleadings) (Page ID #679–722). The clerk entered default against KG on August 20, 2019. R. 20 (Default Entry at 1) (Page ID #732). KG subsequently entered an appearance and moved to set aside the entry of default against it, which the district court granted on September 23, 2019, after the Underwriters withdrew their motion for default judgment. *See* R. 32 (Order at 1) (Page ID #784). On October 4, 2019, KG answered the Complaint, filed a counterclaim for declaratory relief against the Underwriters, and filed an opposition to the Underwriters' still-pending motion for judgment on the pleadings. R. 33 (Answer at 19–21) (Page ID #804–06); R. 34 (Opposition) (Page ID #808–15). Briefing of the motion for judgment on the pleadings concluded on October 18, 2019, when the Underwriters filed their reply. *See* R. 35 (Reply ISO Mot.) (Page ID #816–24).

On December 12, 2019, the district court granted the Underwriters' motion for judgment on the pleadings based on the uncontested facts established by KG's answer and entered final judgment. As for the Underwriters' rescission claim, the district court concluded that judgment on the pleadings was appropriate because KG's "warranty statement" was false, rendering the 2019-2020 Policy void ab initio under Ohio law. R. 37 (Mem. Op. at 7–10) (Page ID #835–38). Regarding the Underwriters' claims for declaratory relief, the court concluded that judgment on the pleadings was appropriate because (1) KG failed to provide timely notice under the 2018-2019 Policy of the three lawsuits and (2) the three lawsuits were "claims made" prior to the coverage period for the 2019-2020 Policy. *Id.* at 6 (Page ID #834).

6

KG timely appealed, R. 40 (Notice of Appeal at 1) (Page ID #842), but has since conceded that it is no longer seeking coverage under the 2018-2019 Policy, *see* Appellant's Br. at 9. Thus, we do not address the district court's ruling on the Underwriters' claims for declaratory relief targeting the 2018-2019 Policy.

## II.  STANDARD OF REVIEW

We review de novo a grant of judgment on the pleadings. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007)). This determination is made only after "all well-pleaded material allegations of the pleadings of the opposing party [are] taken as true." *Id.* (quoting *Winget,* 510 F.3d at 581).

## III.  DISCUSSION

KG first challenges the district court's resolution of the Underwriters' claim for rescission, arguing that the 2019-2020 Policy was not void ab initio due to a false warranty. KG then argues that the district court erred in concluding that the Underwriters were entitled to a declaration that they have no duty to defend KG against the *JP Express*, *Rains & Sons*, and *SIMX* lawsuits, which KG contends are claims made within the coverage period for the 2019-2020 Policy and are not excluded from coverage. We agree with KG that the 2019-2020 Policy was not void ab initio, and thus that the district court erred in granting the Underwriters' motion for judgment on the pleadings as to their claim for rescission. As for the Underwriters' claims for declaratory relief, we conclude that, based on the pleadings, the district court properly found that the Underwriters

have no duty to defend KG in the *JP Express* and *Rains & Sons* actions. The district court erred, however, in reaching the same conclusion as to the *SIMX* action—that claim for declaratory relief cannot be resolved on the pleadings.[2]

Before explaining our reasoning, we set forth a few overarching principles that guide our decision. The first is that the law of the forum state—here, Ohio—governs this diversity action. *See Richelson v. Liberty Ins. Corp.*, 796 F. App'x 277, 280 (6th Cir. 2020) (citing *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015)).[3] The second is that "[u]nder Ohio law, an insurance policy is a contract whose interpretation is a matter of law." *Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 F. App'x 241, 244 (6th Cir. 2012). It follows that, third, we must "give insurance contract terms their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 826 (6th Cir. 2012) (internal quotation marks omitted). "Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties." *Rhoades v. Equitable Life Assurance Soc. of U.S.*, 374 N.E.2d 643,

---

[2]KG also raises a procedural argument, arguing that the Underwriters' motion for judgment on the pleadings was premature. Technically, KG has a point. Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed," and the Underwriters filed their motion before KG had answered the complaint. *See F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002) (judgment on the pleadings "technically unavailable" where defendant had not answered complaint); *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005); Fed. R. Civ. P. 7(a). Any error, however, was harmless. The pleadings had closed by the time the district court ruled on the Underwriters' motion, and KG had the benefit of its answer (and the concessions therein) when it filed its opposition. Indeed, KG does not argue that it was prejudiced by the district court ruling on the Underwriters' motion, even if it was premature. Thus, any error committed by the district court does not warrant reversal. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Time, Inc., v. Viobin Corp.*, 128 F.2d 860, 863 (7th Cir. 1942) (any error was harmless where defendant's premature Rule 12(c) motion was fully argued).

[3]Both parties cite Ohio law. Neither has suggested that any other state's law would be applicable.

644 (Ohio 1978) (per curiam). With these principles in mind, we turn to the substance of this appeal.

**A.**

The Underwriters' claim for rescission rests on the theory that its 2019-2020 Policy with KG was void ab initio due to a false warranty made by KG's President, Frazier, when renewing the policy for the 2019-2020 coverage period. Specifically, the Underwriters point to KG's January 11, 2019 "warranty statement," wherein Frazier stated that, "[a]fter inquiry I, nor any principal, partner, director, officer or professional employee have any knowledge or information of any act, error, omission, fact, circumstance or contentions of any incident which may give rise to a claim being made against us," despite the fact that the three lawsuits had been filed against KG in 2018. R. 1-10 (Warranty Statement) (Page ID #152). KG's response is that it was unaware that these suits constituted "claims" within the meaning of its policy until on or about April 2019, such that its January 11, 2019 "warranty statement" was not false.

As correctly identified by the district court, the key issue for the Underwriters' rescission claim is whether KG's "warranty statement" was a true "warranty" as opposed to a mere "representation." *See* R. 37 (Mem. Op. at 7) (Page ID #835). That distinction is significant because, under Ohio law,

> [t]he consequences of a misstatement of fact by an insured are entirely different, depending on whether the statement is a warranty or a representation. If the statement is a warranty, a misstatement of fact voids the policy ab initio. However, if the statement is a representation, a misstatement by the insured will render the policy voidable, if it is fraudulently made and the fact is material to the risk, but it does not void the policy ab initio.

*Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (Ohio 1971). Where the policy is void ab initio due to a false warranty, the insurer is not liable under it. *See id.* But, "[a]lthough an insurer may

9

cancel a voidable policy, a representation 'may not be used to avoid liability arising under the policy after such liability has been incurred.'" *Goodman v. Medmarc Ins.*, 977 N.E.2d 128, 133 (Ohio Ct. App. 2012) (quoting *Boggs*, 271 N.E.2d at 857).

The distinction between a true warranty and a representation has further significance that is relevant here, in the context of a motion for judgment on the pleadings. For a true warranty, the insured's good faith is of no consequence—a false warranty renders the policy void ab initio even if the falsity is innocent. *Republic Mut. Ins. Co. v. Wilson*, 35 N.E.2d 467, 468 (Ohio Ct. App. 1940) ("If the statements as to material facts are false they void the contract of insurance regardless of the knowledge of their falsity or the intention of the defendant."). Put differently, a warranty that is not literally true voids a policy ab initio. *Spriggs v. Martin*, 182 N.E.2d 20, 22 (Ohio Ct. App. 1961) ("[A] warranty is a stipulation in writing on the face of the policy, on the literal truth of which the validity of the entire contract depends."). In contrast, a false representation will render the policy voidable only "if it is fraudulently made and the fact is material to the risk," *Boggs*, 271 N.E.2d at 858, which is generally a question for the trier of fact, *see Care Risk Retention Grp. v. Martin*, 947 N.E.2d 1214, 1225 (Ohio Ct. App. 2010).

Typically, Ohio courts apply a two-pronged approach to distinguish warranties and representations. "The first prong requires that the 'representation [ ] plainly appear on the policy [ ] or be plainly incorporated into the policy . . . . Under the second prong, the policy must plainly warn that a misstatement or misrepresentation renders the policy void from its inception." *Goodman*, 977 N.E.2d at 132 (alterations in the original) (internal citation omitted). However, some Ohio courts have identified a preliminary inquiry that must be satisfied before the two-prong test comes into play. Specifically, those courts have recognized that, even where the two-prong

test would otherwise be satisfied, "expressions of personal belief or opinion"—as opposed to "statements of fact"—cannot constitute a true warranty (and instead operate as a mere representation). *Care Risk Retention*, 947 N.E.2d at 1224; *see also Heath v. Buckeye Union Ins. Co.*, No. L 79-009, 1979 WL 207312, at *3 (Ohio Ct. App. 1979) (statement qualified by "to the best of my knowledge and belief" did not constitute a warranty). All of these rules operate against the broader principle that because "policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured." *Med. Protective Co. v. Fragatos*, 940 N.E.2d 1011, 1016 (Ohio Ct. App. 2010). Thus, "[c]ourts do not favor warranties, or forfeitures from the breach thereof, and a statement as to conditions does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation." *Id.*

Here, the district court concluded that KG's "warranty statement" was a true warranty based on its application of the two-prong approach, but without inquiring into whether the statement was of a kind that could qualify as such under Ohio law. Although we do not take issue with the district court's application of the two-prong approach as such, we think that KG's "warranty statement" is best understood as an "expression of personal belief or opinion," such that it was nothing more than a mere representation. The "warranty statement" provided Frazier's belief or opinion as to the existence of circumstances that could give rise to a claim, rather than offering particular "statements of fact." *Care Risk Retention*, 947 N.E.2d at 1224. Thus, as a matter of Ohio law, the "warranty statement" could not constitute a true warranty such that its literal falsehood would have rendered the 2019-2020 Policy void ab initio. *See id.*

*Care Risk Retention* illustrates this concept and provides an analogous circumstance for comparison. In that case, a doctor submitted an application for malpractice insurance that included: (1) a negative answer to the question "Do you have knowledge or information of any potential or actual claim or suit that may be brought against you or of any incidents?"; (2) a statement declaring that "I know of no potential or actual claims, suits, or incidents presently pending which have not been reported to my previous carrier(s)"; (3) a statement that "I have no knowledge or information relating to a MEDICAL INCIDENT which could reasonably result in a claim, that has NOT been reported to a prior insurance carrier"; and (4) a statement that "I have no knowledge of ANY REQUEST FOR MEDICAL RECORDS which might result in a claim." *Id.* at 1217–18. The court concluded that these statements were not warranties because they went to the doctor's "personal belief or opinion, rather than statements of fact" because the doctor had merely represented his understanding of whether an "incident" had occurred, whether there were "potential" claims, or whether a request "might" result in a claim. *Id.* at 1224. The same is true of KG's "warranty statement," wherein Frazier provided that "I, nor any principal, partner, director, officer or professional employee have any *knowledge* or information of any act, error, omission, fact, circumstance or contentions of any *incident* which *may* give rise to a claim being made against us." *See* R. 1-10 (Warranty Statement) (Page ID #152) (emphasis added). Like the doctor in *Care Risk Retention*, Frazier provided his opinion or belief as to the existence of circumstances that could give rise to a claim within the meaning of the 2019-2020 Policy, which cannot constitute a warranty under Ohio law. *See* 947 N.E.2d at 1224.

Because KG's "warranty statement" was a mere representation, its alleged falsity could not render the 2019-2020 Policy void ab initio, and thus the district court erred in granting the

12

Underwriters' motion for judgment on the pleadings as to their claim for rescission. *See Boggs*, 271 N.E.2d at 858. The alleged falsity of the "warranty statement" would render the policy at best *voidable*, and a finding of voidability requires that the Underwriters prove that KG made its representation fraudulently and that it was material to the risk. *See id.* Limited, as we are, to the uncontested facts in the pleadings and only those inferences that favor KG, those determinations would be premature at this stage. *See Care Risk Retention*, 947 N.E.2d at 1225.[4]

## B.

The Underwriters' claims for declaratory relief under the 2019-2020 Policy target the *JP Express*, *Rains & Sons*, and *SIMX* lawsuits, not the TFU demand.[5] In essence, the Underwriters seek a judicial declaration that they have no duty to defend KG in those three suits under the 2019-2020 Policy for either of two reasons: (1) each lawsuit is a "claim made" prior to the coverage period for the 2019-2020 Policy or, in the alternative, (2) each lawsuit asserts claims that are excluded from coverage under the 2019-2020 Policy. The district court agreed that declaratory

---

[4]The dissent criticizes our holding that KG's "warranty statement" was a mere representation because "[n]o party disputed that the statement was a true warranty." Dissent at 21. To be sure, KG's briefing leaves much to be desired, but we cannot say that the issue of whether KG's "warranty statement" is a warranty or a representation is not before us. KG insists that the 2019-2020 Policy is not void ab initio because Frazier was unaware that the lawsuits were "claims" when he made the "warranty statement"; in other words, KG is arguing that the "warranty statement" represented Frazier's sincere belief as to whether KG was subject to a "claim" within the meaning of its insurance policy, whether or not it was literally true. The only way to make sense of that argument is to determine whether the "warranty statement" was a warranty or a representation, because KG's good-faith belief in the veracity of its "warranty statement" would be inconsequential if the statement were a true warranty, which depends on literal truth. *See Spriggs*, 182 N.E.2d at 22; *Boggs*, 271 N.E.2d at 858. Indeed, the district court also undertook an analysis of whether the "warranty statement" was in fact a warranty, R. 37 (Mem. Op. at 7–10) (Page ID #835–38), and the Underwriters renew their arguments from below that the 2019-2020 Policy incorporates the "warranty statement" such that its falsity would render the 2019-2020 Policy void ab initio, *see* Appellee Br. at 22–24. In short, we think that the question of whether KG's "warranty statement" is a true warranty or a mere representation is fairly before us. *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578–79 (2020).

[5]The Underwriters did seek a declaration that it had no duty to defend KG against the TFU demand under the 2018-2019 Policy, R. 1 (Compl. at ¶¶ 110–13) (Page ID #20), but KG now concedes that it is not seeking coverage under the 2018-2019 Policy, Appellant's Br. at 9.

13

relief was warranted pursuant to the Underwriters' first argument because each of the three lawsuits was filed in 2018, prior to the 2019-2020 Policy's coverage period, which began on January 1, 2019. R. 37 (Mem. Op. at 6) (Page ID #834). Because that conclusion was sufficient to grant the declaratory relief sought, the district court did not address the Underwriters' argument in the alternative. The Underwriters renew both arguments here, focusing on their argument that the district court's conclusion was correct, but briefly arguing that the 2019-2020 Policy's exclusions provide an alternative basis for upholding the district court's judgment.[6] On the pleadings, we agree with the district court that the Underwriters have no duty to defend KG against the *JP Express* and *Rains & Sons* lawsuits. We disagree, however, with the district court's conclusion that the same result was warranted as to the *SIMX* lawsuit.

We shall begin with the Underwriters' first argument for declaratory relief—that the three lawsuits brought against KG do not warrant coverage under the 2019-2020 Policy because they are claims made prior to coverage period. "A claims-made policy," like the 2019-2020 Policy, "covers losses that arise during the policy period, regardless of when the events underlying the claim might have occurred." *McCarty v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 699 F. App'x 464, 468 (6th Cir. 2017) (citing *Toledo-Lucas Cnty. Port Auth. v. Axa Marine & Aviation Ins. (UK), Ltd.*, 368 F.3d 524, 527 (6th Cir. 2004)). In pertinent part, the 2019-2020 Policy provides coverage for "claim[s] first made against [KG] and reported in writing to the Underwriters during the Certificate of Insurance Period," i.e., between January 1, 2019 and January 1, 2020. R.

---

[6]Despite failing to plead a claim for declaratory relief specific to the TFU demand under the 2019-2020 Policy, the Underwriters argue briefly on appeal that they have no duty to defend KG because the claims asserted in the TFU demand fall within the 2019-2020 Policy's coverage exclusions. Because the Underwriters failed to plead such a claim, we will not address it here. *See Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 406 n.1 (6th Cir. 2006).

1-2 (2019-2020 Policy at 1) (Page ID #29, 32). And a "claim," within the meaning of the 2019-2020 Policy, is "a demand for money or services naming [KG] arising out of an act or omission in the performance of professional services. A claim includes the *service* of suit or the institution of an arbitration proceeding against [KG]." *Id.* at 3 (Page ID #34) (emphasis added). Thus, under the unambiguous language of the 2019-2020 Policy, whether the three lawsuits fall within the Certificate of Insurance Period—January 1, 2019 to January 1, 2020—turns on the date that KG was *served*, not the date that the suits were filed against KG, and it was an error for the district court to hold otherwise.[7]

---

[7]The Underwriters (and the dissent) insist that the district court correctly held the date of filing to be the date upon which a "claim" is "made" under the 2019-2020 Policy, but we reject such an interpretation of the agreement as unreasonable. For one thing, it contradicts the plain language of the agreement, which specifically calls out "service" as the pivotal event for determining when a claim is made. Filing a complaint is the first step in commencing a civil action, *see* Fed. R. Civ. P. 3, and it is followed by issuance of the summons and service of process, *see* Fed. R. Civ. P. 4. Thus, an interpretation of the 2019-2020 Policy that would have a "claim" be "made" at the time a lawsuit is filed would render the agreement's express use of the word "service" in the definition of claim superfluous, because service occurs only after filing. Accordingly, we cannot adopt the Underwriters' interpretation. *See State v. Bethel*, 854 N.E.2d 150, 167 (Ohio 2006) ("[A]n interpretation that would render a provision meaningless . . . 'is neither acceptable nor desirable under the normal rules of contract construction.'" (quoting *Hybud Equip. Corp. v. Sphere Drake Ins.*, 597 N.E.2d 1096, 1103 (Ohio 1992))). For another thing, it makes good sense for the parties to pinpoint service, rather than filing of a complaint as the trigger for the insured's obligation to give the insurer notice of a claim being made against it. Under the 2019-2020 Policy, KG must give the Underwriters notice of a claim within sixty days of the end of the coverage period, which is December 31, 2020. R. 1-2 (2019-2020 Policy at 6) (Page ID #37). Thus, if a claim were filed against KG on December 27, 2020, but for some reason was not served on KG until March 10, 2021, KG would not be entitled to coverage through no fault of its own if the complaint filing date controlled. *See id.* In short, we have no difficulty concluding that under the 2019-2020 Policy a "claim" is "made" when KG is served, not when the complaint is filed, at least in the absence of some earlier demand being made upon KG (such as, in certain circumstances, a pre-litigation demand letter or, possibly, request for waiver of service).

We acknowledge that our interpretation of "claim" within the meaning of the 2019-2020 Policy does not match the interpretations presented by the Parties, but we do not think that prevents us from adopting it. The Parties agree that this court must interpret the term "claim" in order to resolve this dispute, Appellant's Br. at 9 ("The interpretation as to whether KG timely reported the claims depends on the definition of the term 'claims' within the subject policy."); Appellee's Br. at 18, and the interpretation of an insurance policy is a question of law, which we review de novo. *Schwartz Manes Ruby & Slovin, L.P.A.*, 483 F. App'x at 244. Thus, where—as here—the parties have raised an interpretive issue regarding the meaning of a disputed term but fail to present reasonable interpretations themselves, we may adopt our own interpretation of an unambiguous term or provision consistent with our duty to "give insurance contract terms their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy." *Retail Ventures*, 691 F.3d at 826 (internal quotation marks omitted); *Rhoades*, 374 N.E.2d at 644 ("Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties."). Though not desirable, courts

Applying this interpretation of the 2019-2020 Policy to the uncontested facts established by the pleadings yields mixed results. First, the district court was correct that the *Rains & Sons* and *JP Express* lawsuits are claims made prior to January 1, 2019, such that the Underwriters have no duty to defend KG in those actions under the 2019-2020 Policy. Although the pleadings do not explicitly identify the date that the *Rains & Sons* complaint was served on KG, KG admits that it filed an answer to that complaint on September 17, 2018. R. 1 (Compl. at ¶ 21) (Page ID #5); R. 33 (Answer at ¶ 21) (Page ID #790). It can thus be inferred that KG was served prior to that, and outside of the coverage period for the 2019-2020 Policy. As for *JP Express*, the Underwriters allege that "KG defended the JP Express Complaint and a preliminary injunction was granted against KG in July, 2018." R. 1 (Compl. at ¶ 16) (Page ID #5). KG admits that it defended the suit and that a preliminary injunction issued, but it otherwise denies the allegations in that paragraph, including the date that the preliminary injunction issued. *See* R. 33 (Answer at ¶ 16) (Page ID #789). Nevertheless, we may take judicial notice of the fact that the preliminary injunction in question did in fact issue in July 2018, such that it can be inferred that KG was served prior to that date, outside of the coverage period for the 2019–2020 Policy. *See JP Express Serv., Inc. v. KG Admin. Servs., Inc.*, No. CV 18-00134-CJC(RAOx), 2018 WL 3815046 (C.D. Cal. July

---

will go beyond the interpretations offered by the parties when they must. *See, e.g.*, *Heavy Petroleum Partners, LLC v. Atkins*, 457 F. App'x 735, 744, 746–47 (10th Cir. 2012); *Essential Hous. Mgmt., Inc. v. Walker*, 166 F.3d 332, 1998 WL 559349, *5–8 (4th Cir. 1998) (per curiam) (unpublished table op.); *Healthcare Servs. Grp., Inc. v. Bristol Health Care Invs., LLC*, No. 1:18-CV-59, 2019 WL 7046755, at *14 (E.D. Tenn. May 22, 2019); *Roberts v. Am. Fam. Mut. Ins.*, 144 P.3d 546, 550–51 (Colo. 2006); *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 41 n.2 (2015) (Thomas, J., concurring in the judgment in part and dissenting in part) ("Parties cannot waive the correct interpretation of the law simply by failing to invoke it.") (citing *E.E.O.C. v. Fed. Lab. Rels. Auth.*, 476 U.S. 19, 23 (1986) (per curiam)); *UC Health v. N.L.R.B.*, 803 F.3d 669, 679 n.5 (D.C. Cir. 2015). We think this such a circumstance. *Sineneng-Smith*, a criminal case referenced by the dissent but involving the Ninth Circuit's advancement of a non-interpretive theory of the case distinct from that raised by the parties, is therefore inapposite. 140 S. Ct. at 1578–79.

2, 2018); *see also Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule [12(c)], a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

KG's response is somewhat circuitous. It argues that these lawsuits warrant coverage because it did not recognize that they were claims until April 2019, at which point it promptly gave notice to the Underwriters of the claims made against it. *See* Appellant's Br. at 9–10. We understand KG's argument to be that, in essence, a claim is not a claim until KG subjectively realizes that it is a claim. We reject this argument. The unambiguous language of the 2019-2020 Policy provides that coverage exists only for "claim[s] first made" during the policy period and defines service of a lawsuit as a claim. R. 1-2 (2019-2020 Policy at 1) (Page ID #32). In the absence of language suggesting that there is a subjective element to determining whether a given lawsuit is a "claim" within the meaning of the Policy, the inquiry is an objective one. *See Schwartz*, 483 F. App'x at 245; *Mueller v. Taylor Rental Ctr.*, 667 N.E.2d 427, 430 (Ohio Ct. App. 1995). KG has not directed us to any authority to the contrary, and we have not uncovered any such authority ourselves. Thus, KG's subjective realization that a lawsuit constituted a "claim" within the meaning of the policy is beside the point—what matters is the date of service.

Turning to the *SIMX* lawsuit, the district court erred in concluding that the pleadings established that the *SIMX* lawsuit is a claim made prior to January 1, 2019, because the pleadings do not establish the date that KG was served with that lawsuit. The closest that the Underwriters get is alleging that "[a]ccording to a declaration filed on February 27, 2019, KG first became aware of the SIMX complaint on or around January 15, 2019." R. 1 (Compl. at ¶ 28) (Page ID #6).

17

Although KG admits this allegation, R. 33 (Answer at ¶ 28) (Page ID #791), such roundabout pleading does not shed light on the date of service. If anything, it provides a plausible basis for inferring that service of the *SIMX* lawsuit took place after January 1, 2019, and thus during the coverage period. Because there is an issue of material fact as to the date of service for the *SIMX* complaint, the Underwriters are not entitled to judgment on the pleadings and a declaration that they have no duty to defend KG in the *SIMX* action based on it being a claim made prior to the 2019-2020 Policy's coverage period.[8]

The Underwriters' argument in the alternative does not save the district court's ruling regarding the *SIMX* lawsuit. The Underwriters contend that they have no duty to defend KG in the *SIMX* action because the claims in that complaint are excluded from coverage under the 2019-2020 Policy.[9] That is incorrect. The *SIMX* complaint pleads a claim for fraud, R. 1-7 (*SIMX* Compl. at ¶¶ 33–40) (Page ID #143–44), and although the 2019-2020 Policy excludes from coverage claims arising from fraudulent acts or omissions, it provides that the Underwriters will

---

[8]The dissent suggests that we could take judicial notice of the fact that service of the *SIMX* complaint took placed on December 6, 2018 based on the proof of service filed in that case. Dissent at 21 (citing Proof of Service, *SIMX*, No. 3:18-cv-2067 (S.D. Ill. Dec. 10, 2018), ECF No. 11). We respectfully decline to do so. Although we may take notice of the existence of court documents, we may not take notice of "the truth of the facts recited therein." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)). Thus, while we can take notice of the existence of the preliminary injunction order in *JP Express* (and, naturally, the date upon which it was entered), and could take notice of the existence of the proof of service filed in *SIMX*, we may not take notice of the fact asserted therein that service took place on December 6, 2018. *See Winget*, 537 F.3d at 576; *Zaragoza-Rios v. City of Concord*, No. 18-CV-06803-JCS, 2019 WL 2247856, at *3 (N.D. Cal. 2019) (declining to take judicial notice of date of service from a proof of service filing). The better course is to have the Underwriters establish the date of service upon remand, which is unlikely to pose an obstacle unless KG can raise a genuine dispute as to whether service occurred as set forth in the *SIMX* proof of service.

[9]This argument appears to assume, at this stage at least, that the claims in the *SIMX* complaint arise out of acts or omissions in the performance of KG's third-party administration services such that they fall within the 2019-2020 Policy's coverage for "professional services." R. 1-2 (2019-2020 Policy at 1) (Page ID #32); *see* R. 1-7 (*SIMX* Compl. at ¶¶ 15–32) (Page ID #140–43) (alleging that KG administered health benefits for SIMX).

provide KG with a defense until a final adjudication of the claim, at which point the Underwriters may seek recovery of defense costs if it is established that KG committed a fraudulent act or omission, R. 1-2 (2019-2020 Policy at 5) (Page ID #36). Moreover, the *SIMX* complaint pleads a claim for defamation, R. 1-7 (*SIMX* Compl. at ¶¶ 48–52) (Page ID #145–46), which arguably falls within the definition of "personal injury," specifically covered by the 2019-2020 Policy, R. 1-2 (2019-2020 Policy at 1, 4) (Page ID #32, 35) (providing coverage for claims "including personal injury" and defining that term to include "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization"). It follows that the Underwriters have a duty to defend the *SIMX* action, because, in Ohio, "where a complaint states a claim that is partially or arguably within policy coverage, the insurer has an absolute duty to assume the defense of the entire action." *Erie Ins. Exch. v. Colony Dev. Corp.*, 736 N.E.2d 941, 946 (Ohio Ct. App. 1999). Because there is a "possibility of coverage under the policy based on the allegations in the [*SIMX*] complaint," the Underwriters are not entitled to judgment on the pleadings on their claim for a judicial declaration that they have no duty to defend KG in the *SIMX* action. *Id.*

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** in part and **AFFIRM** in part the district court's judgment on the pleadings in favor of the Underwriters. Accordingly, we **REMAND** for further proceedings consistent with this opinion.

**COOK, Circuit Judge, dissenting in part.** I must respectfully dissent from the conclusions reached by the majority to questions not posed by appellant and supported by arguments appellant never offered.

Consider KG's argument section of its brief. The first claim raised and briefed presses the procedural argument that the district court entered judgment prematurely. The majority agrees that any error claimed from entering judgment prematurely was harmless.

Next, KG raised two substantive arguments. It maintains that its notification to Underwriters actually was timely when given in 2019. The majority properly rejects this argument. Nevertheless, it reverses the grant of judgment relating to the SIMX complaint, finding it "plausible" that it was a claim made during the 2019 policy "because the pleadings do not establish the date that KG was served with that lawsuit." It supposes that a claim "turns on the date that KG was served, not the date that the suits were filed against KG."

Contrast that with KG's briefing. KG never advanced a date-of-service argument, opting to argue that "a claim is not a claim until KG subjectively realizes that it is a claim." We consistently decline to reach arguments without the parties addressing them first. *See, e.g.*, *Aaron v. O'Connor*, 914 F.3d 1010, 1020 (6th Cir. 2019) (Moore, J.) ("It is well-settled that issues not presented to the district court . . . are not properly before this Court." (citation omitted)); *Salary Pol'y Emp. Panel v. Tenn. Valley Auth.*, 149 F.3d 485, 491 n.8 (6th Cir. 1998) (Moore, J.) ("an appellate court should confine its review to issues raised below").

In adopting an unbriefed position, the majority rewrites the contract to narrow the definition of "claim." I would rely on the policy's plain language, defining "claim" as "a demand for money or services naming the Insured arising out of an act or omission in the performance of

20

professional services[,] includ[ing] the service of suit." This language encompasses the filing of a lawsuit. In fact, consider the implausibility that "service of the SIMX lawsuit took place after January 1, 2019"—KG received service on December 6, 2018. *See* Proof of Service, *S. Ill. Motor Xpress, Inc. v. KG Admin. Servs., Inc.*, No. 3:18-cv-2067 (S.D. Ill. Dec. 10, 2018), ECF No. 11. Curiously, the majority judicially notices the JP Express date of service, but not this one.

KG's only other substantive argument also relies on its misplaced subjective belief that the suits filed against it did not amount to "claims" as defined by the policy. It uses that untenable rationale to support its view that the material misrepresentations in its renewal application also resulted from its President's tardy "realization" that these lawsuits amounted to claims. Having already rejected this argument, our work here should be finished. Yet, the majority nevertheless opines "we think that KG's 'warranty statement' is best understood as an 'expression of personal belief or opinion,'" not a "true warranty." No party disputed that the statement was a true warranty. Ignoring the parties' briefing, the majority "reach[es] to resolve an issue that is not properly before it. . . . contravening this court's longstanding precedent." *United States v. Ellison*, 462 F.3d 557, 564 (6th Cir. 2006) (Moore, J., dissenting).

Whether a false warranty voids a policy is very basic stuff. *See Redden v. Const. Life Ins. Co.*, 173 N.E.2d 365, 367 (Ohio 1961) ("One of the elementary principles of insurance law is that nothing more completely vitiates an insurance contract than false answers to material questions in the application."). To renew its policy, KG provided its warranty "[a]fter inquiry," assuring that it lacked "any knowledge or information" concerning claims against it. This was a falsehood, not a personal belief. And the policy clearly warned KG of its consequences: "[a]ny material misrepresentation or concealment by [KG] will render the Certificate of Insurance null and void

21

and relieve the Underwriters from all liability herein." *See Allstate Ins. Co. v. Boggs*, 271 N.E.2d 855, 858 (1971).

An appellate court's "proper function" is "to determine if an erroneous decision was made as to the issues presented." *Pouncy v. Palmer*, 846 F.3d 144, 163 (6th Cir. 2017) (citation omitted). Instead, today's majority indulges preferences with phrases such as "in other words, KG is arguing" and "[t]he only way to make sense of that argument," and then concluding with "[i]n short, we think the question . . . is fairly before us." In another footnote, we find the majority gets to a non-argued proposition because "it makes good sense."

Plainly, the majority "err[s] in ruling on grounds not raised by the parties." *Citizens Coal Council v. EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc). The Supreme Court recently found an "appeals panel departed so drastically from the principle of party presentation" that the Court vacated and "remand[ed] the case for an adjudication of the appeal attuned to the case shaped by the parties rather than the case designed by the appeals panel." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578 (2020).

I would affirm, and thus respectfully dissent.